983 A.2d 652

**LISS & MARION, P.C., individually and on behalf of all others similarly situated, Appellees**

**v.**

**RECORDEX ACQUISITION CORP. d/b/a Sourcecorp Healthserve and Sourcecorp, Inc., Appellants.**

Supreme Court of Pennsylvania.

Argued April 14, 2009.

Decided Nov. 16, 2009.

200

202

Don Parks Foster, Esq., Klehr, Harrison, Harvey, Branzburg & Ellers, L.L.P., Philadelphia, for Recordex Acquistion Corp. and Sourcecorp. Incorporated

Thomas More Marrone, Esq., Alan M. Feldman, Esq., Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock & Dodig, Philadelphia, for Liss & Marion, P.C.

CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice GREENSPAN.

We decide whether a class of medical record requesters may recover alleged overcharges from a copying service hired by medical care providers to fulfill their record requests. The Superior Court held that the trial court properly entered summary judgment in favor of the class and against the copying service. We affirm.

### Background

In 1986, the General Assembly amended provisions of Title 42 relating to the admission of evidence permitting litigants to introduce certified copies of original medical records at trial without having to present preliminary testimony as to their foundation, identity, and authenticity. 42 Pa.C.S. §§ 6151–6160. Known as the Medical Records Act (MRA), the enactment streamlines the records request process and caps the prices that medical care providers or their designated agents can charge for copying. 42 Pa.C.S. § 6152.

Recordex Acquisition Corp. and its parent corporation Sourcecorp, Inc. (Appellants) have contracts with approximately forty Philadelphia-area hospitals to provide medical record copying services. A hospital receives a subpoena or a request for medical records from a litigant or his attorney and chooses whether to remit the originals or a certified copy of those records. 42 Pa.C.S. § 6152. If the hospital chooses to provide copies, it refers the request to Appellants, who retrieve the medical record and make a copy for the requester. Appellants invoice the requester directly, either before or after fulfilling the request.

Hospitals generally store patient records in six forms including, paper, microfilm, and electronic. "Electronic" records are either original computer generated charts or optical image files of charts scanned by hospital personnel and saved on hospital computers. Appellants' invoices listed copies from paper as "paper," copies from microfilm as "microfilm," "microfiche," or "fiche,"[1] and copies from electronic records as "fiche/optical" or "fiche/image." Admitted Facts for Summary Judgment (AF) at ¶ 12. In their invoices, Appellants billed copies from both electronic and microfilm records at the microfilm rate (rate M). AF at ¶¶ 4, 16. Rate M is the highest permissible charge for certified copies under the MRA and applies only to microfilm. 42 Pa.C.S. § 6152(a)(2).

In February 2003, the law firm of Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock, and Dodig (Feldman firm) filed this class action lawsuit on behalf of a client it represented in a personal injury action and others similarly situated. The five-count complaint alleged that Appellants overcharged the client and others similarly situated by billing for copies of electronic records at rate M rather than at a lower default rate (rate D).

Appellee, Liss & Marion, P.C., is a law firm that represents plaintiffs on a contingency fee basis. Appellee was added to the lawsuit in March 2003. Appellee had represented several

1. 42 Pa.C.S. § 6152 refers to "microfilm" while Appellants' invoices refer to "fiche." However, microfilm, microfiche, and fiche are the same medium.

litigants who requested medical records from the hospitals under contract with Appellants. Following each request, Appellee typically received the certified copies of the records and an invoice directly from Appellants. On a few occasions, Appellants billed Appellee before remitting the certified copies. Appellee did not negotiate or challenge any of the invoices before joining this class action. AF at ¶¶ 13–14.

Appellants filed preliminary objections and sought dismissal of the complaint. The trial court sustained the objections in part and allowed the lawsuit to proceed only as a breach of contract action. In the breach of contract count, the contention was that the MRA-authorized rates were implied into contracts evidenced by Appellants' invoices and that by charging more than rate D for copies of electronic records, Appellants breached those contracts. In their answer to the complaint, Appellants denied the allegations and raised a "voluntary payment" defense.

In July 2004, the trial court certified the following class:

All individuals and entities who, with respect to a request or a subpoena for medical records or charts of health care provider or employee of any health care provider licensed under the laws of the Commonwealth of Pennsylvania, were billed for or paid to one or both of the defendants either or each of the following: (1) a charge for copies of records greater than the amounts prescribed by the Secretary of Health under the Medical Records Act ("MRA"), 42 Pa.C.S. § 6152 et seq.; and (2) an unauthorized and/or unreasonable charge for copies from media not specifically provided for in the MRA. The class shall exclude class counsel, their law firm, and any lawyer or employee of their law firm.

Trial Ct. Order, 7/9/2004. The trial court named Appellee as the class representative and the Feldman firm as class counsel.[2]

---

**2.** The trial court did not certify the class originally proposed by Appellee, which would have included clients who requested records through their attorneys in addition to the attorneys themselves. The court concluded that the clients' claims would be "duplicative" of the attor-

In April and May 2005, the parties filed cross motions for summary judgment. After a hearing, the trial court entered summary judgment in favor of the class and ordered a full accounting at the Appellants' expense. Ultimately, the trial court entered judgment on a molded verdict in favor of the class for $594,301.05. The Superior Court affirmed the judgment. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 937 A.2d 503 (Pa.Super.2007). It held that Appellee had met the prerequisites for class certification. *Id.* at 510. Further, the Superior Court concluded that the trial court properly entered summary judgment in favor of the class. *Id.* at 514.

We granted permission to appeal on the following issues:

1) Does a private cause of action for breach of an implied contract arise out of a violation of the [MRA]?

2) Does the [MRA] require that copying of any records other than those stored on microfilm be billed at the rate specified for copying records stored on paper?

3) Do common issues of fact and law predominate among members of the class certified by the trial court?

Appellants argue that the Superior Court erred in upholding the class certification and affirming the trial court's entry of summary judgment on the merits of Appellee's breach of contract claim. Appellee denies any error.

## Breach of Contract Claim

The standard for review of the trial court's entry of summary judgment is well established. We may disturb a trial court order granting summary judgment only if the lower court committed an error of law. *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 962 A.2d 639, 647 (2009). A trial court properly enters summary judgment if "there is no genuine issue of any material fact as to a necessary element of the cause of action." Pa.R.C.P. 1035.2(1). The moving party's right to summary judgment has to be clear and free from doubt after examination of the record in a light most favorable to the non-moving party and resolution of all doubts as to the

neys' claims so it limited the class as stated. Trial Ct. Memo., 7/12/2004, at 10.

existence of a genuine issue of material fact against the moving party. *LJL Transp.*, 962 A.2d at 647. In this case, the trial court held that no genuine issues of fact existed and that the sole inquiry was whether Appellants' "billing practices were unlawful." Trial Ct. Memo., 11/27/2006, at 5. The court then held that Appellants should have billed copies from electronic records at rate D instead of rate M and that Appellee was entitled to damages for the overcharges. In determining whether the trial court erred, our standard of review is *de novo* and our scope of review is plenary. *LJL Transp.*, 962 A.2d at 647.

Appellants make two claims: first, that Appellee did not state a viable claim for breach of contract and, second, that if it did, Appellee's breach of contract claim is barred by the voluntary payment defense. In support of their first argument, Appellants assert that the MRA does not authorize a private cause of action. They also state that Appellee's claim is barred for failure to "exhaust a statutory remedy." Appellants' Brief at 21. Appellants suggest that discovery proceedings in the underlying lawsuits in which the medical records were requested are the sole form of relief envisioned by the legislature in drafting the MRA. They argue that the MRA does not provide for a private cause of action to enforce the statutory price limits and that Appellee is merely seeking to circumvent the statute "through the artifice of pleading" a breach of contract. In the alternative, Appellants assert that the lack of remedies in the MRA is a specific "term" that can be implied into the parties' contract to eliminate any private cause of action. Appellants' Brief at 17, 20–25.

In support of their second argument, Appellants assert that Appellee was or should have been aware of the MRA's pricing limitations and that by not complaining about the higher charges listed in the individual invoices, Appellee accepted them. Therefore, according to Appellants, the breach of contract claim is barred by the voluntary payment doctrine. Appellants' Brief at 20–25.

Appellee responds that its claims are not statutory. Rather, according to Appellee, its claims arise through common law

and, at common law, the pricing limits set by the MRA are properly implied into the parties' contract. Appellee asserts that the MRA sets two rates: a higher rate for copies from microfilm—rate M—and a default rate for copies from all other media—rate D. According to Appellee, Appellants improperly charged rate M for copies from electronic records. As a result, Appellee alleges that Appellants breached the parties' contract. Appellee's Brief at 9–14. After careful review, we hold that Appellee's position prevails.

In the following three sections we will address in turn, the MRA and its purpose, the nature and terms of the parties' contractual relationship, and Appellants' defense.

*The MRA*

The MRA imposes a duty on medical care providers, like the hospitals that hired Appellants, to produce medical records in a timely fashion, *i.e.,* within three days of receiving a subpoena or request. 42 Pa.C.S. § 6152(a)(1). A hospital may elect to provide either the original records or certified copies. 42 Pa.C.S. § 6152(a)(1). If the hospital chooses to provide copies, it must supply in its response to the request an estimate of the "actual and reasonable expenses of reproducing the charts or records." 42 Pa.C.S. § 6152(a)(1).

Separately, the MRA also places limits on the prices charged by medical providers or their "designated agents" for copying medical records. 42 Pa.C.S. § 6152(a)(2). According to the MRA,

> The payment shall not exceed $15 for searching for and retrieving the records, $1 per page *for paper copies* for the first 20 pages, 75¢ per page for pages 21 through 60 and 25¢ per page for pages 61 and thereafter [ (rate D) ]; $1.50 per page *for copies from microfilm* [ (rate M) ]; plus the actual cost of postage, shipping or delivery.

42 Pa.C.S. § 6152(a)(2)(i) (emphasis added). The MRA also states that "[n]o other charges for the retrieval, copying and shipping or delivery of medical records other than those set forth in this paragraph shall be permitted without prior approval of the party requesting the copying of the medical

records." 42 Pa.C.S. § 6152(a)(2)(i). The hospital or its "designated agent" may demand payment before providing copies of the medical records. 42 Pa.C.S. § 6152(a)(2)(i). The MRA does not provide statutory remedies. 42 Pa.C.S. §§ 6151–6160.

■ We agree with Appellants that the MRA does not provide a statutory remedy to recover the overcharges from the hospitals or Appellants. 42 Pa.C.S. §§ 6151–6160. Nevertheless, this is not a ground for reversing the Superior Court's decision as Appellee's claim is not statutory. Instead, Appellee states a common law contract claim.[3]

*The Contract*

■■ We affirm the Superior Court's conclusion that Appellee stated a cause of action in contract. As the lower courts properly noted, Appellants admitted the existence of a contract relationship between the parties and waived any argument to the contrary. AF at ¶¶ 1–3.[4] The parties disagree, however, as to the nature and terms of the contract. The record supports the existence of a contract implied in fact. *See Elias v. Elias*, 428 Pa. 159, 237 A.2d 215, 217 (1968). "A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." *Id.; see also Ingrassia Const. Co. v. Walsh*, 337 Pa.Super. 58, 486 A.2d 478, 483 (1984) (holding that implied contracts may arise where the circumstances, including "the ordinary course of dealing and the common understanding of men, show a mutual intention to contract").[5]

3. Indeed, one of the four counts dismissed by the trial court on preliminary objections was a statutory claim under the MRA. The trial court permitted Appellee to proceed on a breach of contract claim only.

4. However, the admission regarding the existence of a contract here is not dispositive of the issues surrounding the terms of the contract raised by Appellants.

5. Under Pennsylvania law, an implied contract has the same legal effect as any other contract. *Ingrassia Const. Co.*, 486 A.2d at 483 n. 7 (citing *Cameron v. Eynon*, 332 Pa. 529, 3 A.2d 423, 424 (1939)).

Here, even though the parties did not communicate expressly, their intentions to enter into the contract and the attendant obligations are easily inferred from the surrounding circumstances. *See, e.g., Eagle v. Snyder*, 412 Pa.Super. 557, 604 A.2d 253, 253–54 (1992) (holding that payment was required even where parties had "no prior discussion or agreement concerning the charges for the surgery"). Appellants copied specific medical records and mailed them to Appellee. Upon receipt or in advance of receiving the records, Appellee paid the invoiced fee.[6] This conduct indicates that the parties agreed to a service contract supported by sufficient consideration.[7] *Id.*

■ We reject Appellants' argument that Appellee may not assert a common law breach of contract claim because it failed to "exhaust a statutory remedy." Appellants' Brief at 21–22. Appellants appear to confuse two doctrines: exhaustion of administrative remedies and preference of statutory remedies over the common law. Even if Appellants' argument were clear, however, we would not afford Appellants relief under either theory. First, where the MRA does not create any administrative process, *i.e.*, an administrative agency to which Appellee would have had to resort before filing suit on its breach of contract claim, the obligation to exhaust administrative remedies does not apply. 42 Pa.C.S. §§ 6151–6160; *see Ohio Cas. Group of Ins. Co. v. Argonaut Ins. Co.*, 514 Pa. 430, 525 A.2d 1195, 1198 (1987) (holding that exhaustion of adminis-

6. The parties' conduct also indicates that they agreed to a specific fee for Appellants' service. *See id.* The record reflects that both parties expected the MRA to control the price term of their contract. First, Appellants billed and Appellee paid at rates specifically listed in the MRA. AF at ¶¶ 6–7, 12–14. Second, Appellants admitted to using the MRA in their billing practices. AF at ¶¶ 6–7. Finally, as the trial court recognized, the MRA rates embody the public policy of the Commonwealth regarding the amounts to be charged by the industry for copying medical records. Trial Ct. Memo. at 5. The parties are free to negotiate other terms. 42 Pa.C.S. § 6152(a)(2); N.T., 5/3/04, at 49.

7. There are three legal relationships here. First, there is one between Appellee and the hospitals flowing from a subpoena. The second relationship is between the hospitals and Appellants created by express contracts. Finally, there is a contractual relationship between Appellants and Appellee created by their conduct.

trative remedies doctrine applies where administrative remedies are available and adequate with respect to the alleged injury sustained and the relief requested).

█ Second, the doctrine regarding preference for statutory remedies over common law remedies also affords Appellants no relief. *See* 1 Pa.C.S. § 1504. Section 1504 defines the doctrine as follows:

> In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.

1 Pa.C.S. § 1504. For the reasons that follow, we hold that this doctrine does not preclude the instant lawsuit.

Here, the MRA provides no remedy and enjoins no duties. In other words, the MRA does not evidence any legislative intent to limit Appellee's common law rights or preempt common law causes of action. 42 Pa.C.S. §§ 6151–6160. In addition, the legislature did not provide any mechanism or procedure for the resolution of disputes in circumstances where the MRA is violated by designated agents of the hospitals, like Appellants. As noted above, the purpose of the MRA is to eliminate the requirement for preliminary testimony when litigants introduce certified copies of medical records at trial and other judicial proceedings. 42 Pa.C.S. § 6151. The MRA also establishes a procedure for obtaining the certified copies of records from medical care providers, such as hospitals. 42 Pa.C.S. § 6152(a). Appellants are correct to posit that Appellee would have to file discovery motions with the trial court if it wished to enforce a subpoena for medical records against a hospital. *See* 42 Pa.C.S. § 6152(a)(1). Appellee could also file discovery motions if it objected to the rates charged by the hospitals in producing the records for trial. *See* 42 Pa.C.S. § 6152(a)(2).

But this discovery motion procedure is an inadequate remedy for recovery of overcharges from Appellants. Appellants

charged Appellee for copies "from microfilm" when they actually provided "paper copies" of "electronic" documents. They also failed to indicate clearly on the invoices that the original records were electronic rather than microfilm. AF at ¶¶ 6–7, 12–14. Indeed, they falsely represented that the copies were from microfilm by using the term "fiche." Appellee typically discovered the overcharges after the underlying lawsuits for which the records were requested had ended and there was no longer any opportunity to file motions with the trial judge. Even if the overcharge had been discovered before litigation ended, Appellee could not have obtained relief *via* the subpoena enforcement mechanism because Appellants were not named in the subpoenas for records. Indeed, Appellants have not suggested any viable means of enforcing the MRA's price limitations other than through a common law cause of action such as the present one. According to the rules of statutory interpretation, the trial court properly allowed the instant lawsuit to proceed, especially because it was essential to effectuate the legislature's intent to make Appellants subject to the pricing limits of the MRA. 1 Pa.C.S. §§ 1504, 1921; *see* 42 Pa.C.S. § 6152(a)(2).

Next, Appellants argue that, even if a contract was formed, Appellee may obtain no remedy for a breach because, just like the pricing terms of the MRA, the MRA's so-called "remedial limitations" are implied into the parties' contract. Appellants' Brief at 17. In other words, according to Appellants, the absence of a section in the MRA listing statutory remedies must be construed as a "term" of the contract that prohibits relief on a breach of contract action. Appellants propose either that the term must be implied into the contract as a matter of law or that the parties should be held to have agreed to such a "term." We reject this argument on several grounds.

Under Pennsylvania law, an implied contract has the same legal effect as any other contract. *Ingrassia Const. Co.*, 486 A.2d at 483 n. 7 (citing *Cameron v. Eynon*, 332 Pa. 529, 3 A.2d 423, 424 (1939)). We agree that the MRA does not contain a section that provides a remedy to Appellee where

"designated agents" like Appellants overcharge for copying medical records. However, absence of statutory language is not a "term" that can be implied into a contract as a matter of law to bar a common law cause of action where such an action would otherwise be proper. The rules of statutory construction are clear on this point. *See* 1 Pa.C.S. § 1928(b)(7) ("provisions decreasing the jurisdiction of a court of record" shall be strictly construed); 1 Pa.C.S. § 1928(c) (unless otherwise enumerated in rule 1928(b), "provisions of a statute shall be liberally construed to effect their objects and to promote justice"). Where the parties do not expressly limit their remedies by contract, no such limitation exists. *Ferrer v. Trs. of the Univ. of Pa.*, 573 Pa. 310, 825 A.2d 591, 610 (2002) (plaintiff entitled to remedies for breach of contract "unless the contract provide[s] otherwise"); *see Loyal Christian Ben. Ass'n v. Bender*, 342 Pa.Super. 614, 493 A.2d 760, 763 (1985) (holding that limitation of a party's right to seek full redress "is of such serious consequence that, in order to be effective, it must be written in clear, direct and unmistakable language"); *Moscatiello v. Pittsburgh Contractors Equipment Co.*, 407 Pa.Super. 363, 595 A.2d 1190, 1195 (1991) (holding that the limitation of remedies "must be physically manifested in a fashion comprehensible to the party against whom it is sought to be enforced").

*Voluntary Payment Defense*

▮▮▮▮ Finally, Appellants argue that the "voluntary payment" defense bars recovery on Appellee's breach of contract claim. They assert that Appellee voluntarily paid rate M for copies from electronic records and that Appellee's failure to know the law does not entitle it to a refund. Under the voluntary payment defense, "one who has voluntarily paid money with full knowledge, or means of knowledge of all the facts, without any fraud having been practiced upon him ... cannot recover it back by reason of the payment having been made under a mistake or error as to the applicable rules of law." *In re Kennedy's Estate*, 321 Pa. 225, 183 A. 798, 802 (1936).

Appellants misstate Appellee's breach of contract claim. In the complaint, Appellee claimed that Appellants breached the parties' contract by charging microfilm rates for copies from electronic records. Appellee did not discover the overcharge because Appellants misrepresented the source of the copies in the invoices. Appellee's claim did not stem, as Appellants suggest, from its ignorance of the MRA's rates for copies from electronic records. In other words, Appellee did not pay the invoices under a mistake of law so the voluntary payment defense does not apply. We hold that Appellants have not raised any impediment, under the statute or by contract, to prevent Appellee from stating a breach of contract claim against Appellants.

## MRA Rates

Having established that Appellee properly stated a contract claim against Appellants, we turn next to the question of whether Appellants breached the parties' contract by charging rate M rather than rate D for copies from electronic records. "Where one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty." *Ferrer*, 825 A.2d at 610. As we noted above, the parties agreed by contract that Appellants would provide copies in accordance with the terms of the MRA. *See supra* at 8.

Appellants allege that the MRA provides prices for copies "from paper" and "from microfilm" records only. Therefore, Appellants argue, electronic records can be billed at any "reasonable" rate. Because Appellee failed to prove at trial that Appellants' rates were unreasonable, Appellants claim that summary judgment should have been entered in their favor. Appellants' Brief at 25–32.

The MRA states in relevant part that the price for copies "shall not exceed" rate D "for paper copies" and rate M "for copies from microfilm." 42 Pa.C.S. § 6152(a)(2)(i). Appellants assert that the legislature intended the phrase "for paper copies" to mean copies "from paper records" only. Appellants' Reply Brief at 12. Based on their reading of the statute, Appellants argue that the MRA does not provide a specific rate for copies from electronic records and, citing to 42 Pa.C.S. § 6152(a)(1), Appellants claim that copies from electronic records can be charged at a "reasonable" rate. Appellants' Brief at 29. We disagree.

 "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The language of the MRA is clear: when providing paper copies from any medium, Appellants are entitled to receive rate D per page.[8] The only exception is when the copies are made from microfilm; then, Appellants can charge the higher rate M. Here, Appellants made paper copies from electronic records and not from microfilm so the rate "for paper copies," rate D, applies.[9] We affirm the lower courts' holdings that the MRA created a higher price rate for copies from microfilm, rate M, and a

8. Although Appellants admit that they had no role in the creation or maintenance of the electronic records, they argue without support in the record that charging rate D does not take into consideration the higher costs of creating and maintaining them. AF at ¶ 11. The relative costs of creating and maintaining the various types of records is irrelevant, however. The MRA is a statute that addresses the cost of *copying* and *not creating* or *maintaining* medical records. 42 Pa.C.S. § 6152(a)(2). As a result, it is understandable why the legislature would create a per page rate "for paper copies" rather than listing rates by type of records maintained by the hospitals.

9. Appellants argue that copies from electronic records need only be billed at a "reasonable" rate because none of the rates enumerated in subsection 6152(a)(2)(i) apply. Because we decide that, in fact, the enumerated rate "for paper copies," rate D, does apply and should have been charged, we do not reach the issue of what rate may be charged when the MRA does not contain a specific relevant rate.

default rate, rate D, for copies from all other media. *See* Trial Ct. Memo. at 8; *Liss & Marion,* 937 A.2d at 512–13.[10]

## Class Certification—Commonality Requirement

Finally, we must determine whether common issues of fact and law predominate among members of the class certified by the trial court such that the certification was proper. The standard for review of a trial court decision to certify a class is well established. Class certification is a mixed question of law and fact. *Kelly v. County of Allegheny,* 519 Pa. 213, 546 A.2d 608, 610 (1988); *Bell v. Beneficial Consumer Disc. Co.,* 465 Pa. 225, 348 A.2d 734, 739 (1975). A trial court's order granting class certification will not be disturbed on appeal unless the court erred as a matter of law by neglecting the requirements listed in Rules 1702 and 1708 of the Pennsylvania Rules of Civil Procedure or abused its discretion in applying them. *Kelly,* 546 A.2d at 610.

According to these Rules, a viable class action must meet several prerequisites including, *inter alia,* that its claims present "questions of law or fact *common* to the class" and that the class action method of adjudication is "fair and efficient." Pa.R.C.P. 1702(2), (5) (emphasis added). The class action method of adjudication is fair and efficient if the "common questions of law or fact *predominate* over any question affecting only individual members." Pa.R.C.P. 1708(a)(1) (emphasis added).

Here, the trial court was correct to hold that Appellee met its burden to show that there were questions of law and fact common to the class. Pa.R.C.P. 1702(2). *See Baldassari v. Suburban Cable TV Co.,* 808 A.2d 184, 191 (Pa.Super.2002),

10. In a related argument, Appellants rely on other states' approaches to argue that they may charge any rate for copying electronic records as long as the rate is reasonable. None of the statutes cited by Appellants contain the same language as the MRA. Indeed, the great majority of the statutes compiled by Appellants merely require that the copying costs charged be "reasonable." Appellants' Brief at 30. Others specifically provide prices for copies from electronic records. Pennsylvania's statute, the MRA, imposes its own price limits that we may not ignore in favor of consistency with other states. *See, generally,* 1 Pa.C.S. § 1921.

*appeal denied*, 573 Pa. 694, 825 A.2d 1259 (2003) (requirement of class certification that there exist a common question of fact "means precisely that the facts must be substantially the same so that proof as to one claimant would be proof as to all"). According to the complaint, the following conduct harmed all the members of the class. Appellants entered into a series of tacit service contracts with the members of the class that relied on the MRA to supply the price term depending on the type of medical records copied.[11] As a matter of company policy, Appellants billed copies from electronic records at rate M. The only question according to Appellee was whether billing rate M for electronic records violated the MRA. If the conduct violated the MRA then Appellants are liable for breaching the contracts. Under Pennsylvania law, these allegations are sufficient to show that the trial court did not err or abuse its discretion in determining that the class met the commonality requirement. Pa.R.C.P. 1702(2); *see Janicik v. Prudential Ins. Co.*, 305 Pa.Super. 120, 451 A.2d 451, 457 (1982) (holding that "common questions generally exist if the class members' legal grievances arise out of the same practice or course of conduct on the part of the class opponent"); *see also Eisen v. Independence Blue Cross*, 839 A.2d 369, 372 (Pa.Super.2003) (holding that no common questions of law and fact exist where "each question of disputed fact has a different origin, a different manner of proof and to which there are different defenses").

Appellants challenge the conclusion that the elements to prove liability on Appellee's breach of contract claim are common to all members of the class and argue that issues of fact and law regarding contract formation, terms, and defenses are individual to each member of the class. In addition, they claim that these individual issues predominate so that proceeding as a class action is not fair and efficient. Appellants assert that it is an individual inquiry whether each member of the class entered into a contract with the price term fixed at the MRA limits rather than a negotiated rate.

11. The price terms of the various contracts are not, as Appellants suggest, the rates in the different invoices. *See infra.*

Appellants posit that some or all members of the class negotiated rate M or, in the alternative, that they were not deceived by the descriptions in the invoices so that they knowingly accepted rate M for copies from electronic records. Appellants also argue that it is an individual inquiry whether the members of the class knew or should have known that they were legally entitled to a lower rate but voluntarily paid rate M. Appellants' Brief at 32–56.

Appellee responds that common issues of law and fact predominate because liability arises in every case out of Appellants' uniform overbilling. According to Appellee, the sole inquiry before us is whether copies from electronic records should have been billed at rate D or rate M. Record requesters who expressly negotiated their rates are not included in the class so issues relevant only to them should not be considered. Appellee's Brief at 14–26. We agree with Appellee.

First, we reject Appellants' contention that individual issues predominate because some of the class members negotiated their own rates. On its face, the class certified by the trial court does not include record requesters who negotiated their own rates because they were not, by definition, overcharged. The class only includes persons who agreed to MRA pricing and were charged rate M for copies from electronic records.[12] Second, Appellants seek reversal on the ground that persons other than attorneys are included in the class. Without support in the record, they list four categories of persons that they believe would be included in the class unintentionally. In spite of Appellants' spirited argument, we fail to see how different types of class members defeat class certification as long as their claims arise from the same conduct. Pa.R.C.P. 1702(2); *Janicik*, 451 A.2d at 457.

12. "All individuals and entities who ... were billed for or paid ... either or each of the following: (1) a charge for copies of records greater than the amounts prescribed by the Secretary of Health under the ... [MRA]; and (2) an unauthorized and/or unreasonable charge for copies from media not specifically provided for in the MRA."

Third, Appellants argue the class was not properly certified because each individual claim is based on different invoices, "all presumptively with an implied price term contrary to the stated price term." The basis of the argument is the assumption that the invoices are the contracts between the parties, each with a stated price term. Appellants claim that each member of the class agreed to the price term stated in the invoice so that they may not argue they were overcharged. Appellants' Brief at 40.

As our previous analysis shows, Appellants start from the wrong assumption. Here, as to each member of the class, the existence of a contract is implied from the parties' conduct. *See supra* at 8; *Elias,* 237 A.2d at 217; *Eagle,* 604 A.2d at 254. The parties' conduct also indicates that they intended the MRA to supply the price; the price varied depending on the nature of the records copied. The invoices are additional proof that such contracts existed and that the price term was meant. to be governed by the MRA, as the billing rates tracked the MRA (though misrepresenting the type of record copied). Thus, whether the parties formed a contract and to what price they agreed is not, as Appellants suggest, an individual inquiry into the content of the invoices. Rather, it is a uniform inquiry into the conduct of Appellants which is common to all the members of the class.

█ Further, no individual inquiry is required into whether each member of the class "relied" on Appellants' misrepresentations. Appellants claim that whether each member of the class can obtain relief depends on whether each can prove that they "relied" on Appellants' description of electronic records as "fiche." We recognize that the class stated several causes of action arising from Appellants' misrepresentations, including for breach of contract, fraud, and a violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL). The trial court, however, dismissed the fraud and UTPCPL claims of the class on preliminary objections and allowed only the breach of contract claim to proceed. In the cases cited by Appellants, the claims addressed by the courts were for common law fraud or under the UTPCPL. *See Toy*

*v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186 (2007) (holding that to establish a claim under the UTPCPL, plaintiff had to prove the same elements as for a common law fraud claim, including justifiable reliance); *Weinberg v. Sun Co.*, 565 Pa. 612, 777 A.2d 442 (2001) (same); *Klemow v. Time Inc.*, 466 Pa. 189, 352 A.2d 12, 16 n. 17 (1976) (stating that "[t]he successful maintenance of a cause of action for fraud includes, *inter alia*, a showing that the plaintiff acted in reliance on the defendant's misrepresentations"). The analysis of courts in those cases is not applicable because "reliance," or "justifiable reliance" more specifically, is not an element that the class must prove to recover for a breach of contract. *Ferrer*, 825 A.2d at 610 (holding that to recover for a breach of contract, a plaintiff must prove that a contract exists, that the contract was breached, and that the breach caused the plaintiff damages). Thus, Appellants' arguments to the contrary notwithstanding, issues of "reliance" do not prevent class certification.

Fourth, Appellants claim that whether each member of the class can overcome the "voluntary payment" defense is an individual issue of law and fact. According to Appellants, each member of the class must prove it "did not know that the quoted term violated the MRA" so as to obtain relief for breach of contract. Appellants' Reply Brief at 16. As we noted above, the doctrine of "voluntary payment" does not bar Appellee's claims because, when it paid, Appellee did not know that it was paying for copies from electronic and not microfilm records.[13] All other members of the class were in the same position as Appellee, having received misleading bills. Hence, they also could not have consented to pay a rate higher than the MRA permits, as they would have had no way of knowing that the Appellants were actually producing copies from electronic rather than microfilm records. *See Liss & Marion, P.C.*, 937 A.2d at 510 (noting that the class does not include record requesters who gave prior approval for higher rates). No individual inquiry is necessary as to each member of the class regarding Appellants' proposed defense.

13. *See* discussion, *supra*, at 12.

Finally, Appellants argue that the class should not have been certified because some of the members passed on the costs of reproducing medical records to their clients and did not have any damages.[14] Appellants' Brief at 45. "Class members may assert a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice." *Baldassari*, 808 A.2d at 191 n. 6. Here, all class members suffered damages when they were overbilled and paid those bills. It is a separate matter whether any class members who passed along improperly augmented copying costs to their clients will ultimately be required to indemnify those clients upon recovery in the present litigation. Indeed, it is notable that Appellee conceded during proceedings in the court of common pleas that such class members would, in fact, have such a duty of indemnification. N.T., 05/03/2004, 72. Accordingly, Appellants' passing-on defense does not undermine class certification. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 489, 490 n. 8, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) (rejecting a so-called "passing-on defense" in the context of antitrust litigation).

## Conclusion

We affirm the decision of the Superior Court to uphold the trial court's class certification decision and the entry of summary judgment as to Appellants' liability.

Chief Justice CASTILLE, and Justice SAYLOR, EAKIN and BAER, Justice TODD and Justice McCAFFERY join the opinion.

---

14. Generally, the client fee agreements gave Appellee the right to collect out-of-pocket expenses whether the client recovered or not. Appellee testified that it exercised the right to collect out-of-pocket expenses if the client recovered but rarely if the client did not recover.