# Bluzenstein v. Chicago Title Ins. Co.

*Paul J. Cohen* and *Jenel R. Marraccini,* for plaintiff. *Kevin B. Quinn,* for defendant.

NEW, *J.*, December 28, 2010—

## FACTUAL AND PROCEDURAL HISTORY

This case arises from the purchase of, and subsequent tax lien execution on, a parcel of real property located at 2001 Federal Street, Philadelphia. Plaintiff Bernard Bluzenstein purchased the property to be used as an investment property in September of 2005.

Bluzenstein appeared at closing with his real estate agent, Michael Moss, and others, including an agent from Hallmark Abstract Company. The settlement statement, or HUD-1, indicated that Bluzenstein paid 1) $120,000 to purchase the property from Colin Thomas,[1] 2) $958.75 to

---

1. Bluzenstein testified that the actual cost of the house was $155,000; however, the HUD-1 only reflects a purchase price of $120,000 because the house was being "flipped" by a third-party, Sophia Brodsky. Bluzenstein testified that in addition to the $120,000 he paid to Thomas, he wrote a separate check to Brodsky for $35,000.

"Hallmark/Chicago Title" for title insurance, 3) $8,877.92 to satisfy the real-estate taxes that were due from 1992-2005, and 4) $11,905 to satisfy the outstanding water bill. Bluzenstein testified that, although no one from Defendant Chicago Title Insurance Co. was present at settlement, it was his understanding and intention that the $958.75 indicated on the HUD-1 was to be used to purchase title insurance from Chicago Title through its agent, Hallmark Abstract. Because it was being used for investment purposes, the property sat vacant for the next two and one-half (2.5) years.

In January 2008, Moss contacted Bluzenstein's partner, Moisha Meisels, and informed him that the City of Philadelphia Tax Records indicated that the 1992-2005 real estate taxes for the property were unpaid. Meisels, acting on behalf of Bluzenstein, contacted Hallmark and Chicago Title and inquired about the unpaid taxes. According to Meisels, Hallmark assured him that "everything is ok" while Chicago Title gave him "the runaround." In April 2008, the city filed a tax lien against the property, and the property was ultimately sold at sheriff's sale to satisfy the outstanding tax debt.

Bluzenstein filed the instant suit against Chicago Title seeking to recover the proceeds of the title insurance policy. The complaint sounded in breach of contract, fraud, breach of fiduciary duty, and respondeat superior. A one-day non-jury trial was held on June 15, 2010, and on July 28, 2010 the court found in favor of Bluzenstein on the breach of contract claim in the amount of $120,000.00. Chicago Title filed post-trial motions.

## LEGAL ANALYSIS

To recover on a breach of contract claim, the plaintiff must prove 1) the existence of a contract, 2) a breach of a duty imposed by the contract, and 3) resultant damages. *Ocasio v. Prison Health Services*, 979 A.2d 352, 355 (Pa. Super. 2009). Chicago Title argued that Bluzenstein's claim must fail because Bluzenstein could not produce a copy of the title insurance policy and therefore could not prove the existence of a contract.

Despite Chicago Title's protestations to the contrary, a contract existed between Bluzenstein and Chicago Title. A contract can be expressly created or implied in fact. A contract implied in fact is a contract in which the terms, instead of being expressly defined, are inferred from acts in light of the surrounding circumstances. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 210, 983 A.2d 652, 659 (Pa. 2009). An examination of the circumstances and evidence concerning the settlement demonstrate that a contract for title insurance existed between Bluzenstein and Chicago Title. Exhibit P-4 is a check from Hallmark to Chicago Title for $143.81. The check indicates that it is for the property located at 2001 Federal Street and is dated September 15, 2005, the same date as closing. The check has "15%" printed across the bottom. $143.81 is 15% of $958.75, the amount the HUD-1 reflects Bluzenstein paid for title insurance. It is clear from this exhibit that Hallmark, on behalf of Bluzenstein, paid Chicago Title for a title insurance policy concerning the property on the same date as closing. Chicago Title did not offer an alternative explanation for this payment. From this evidence, it is clear that a contract for title insurance

existed between Bluzenstein and Chicago Title.

Chicago Title breached the contract for title insurance when it failed to pay after the city's tax lien encumbered Bluzenstein's title to the property. The purpose of title insurance is to cover possibilities of loss through defects that may cloud or invalidate title. *Rood v. Commonwealth Land Title Ins. Co.*, 936 A.2d 488, 492 (Pa. Super. 2007) (citations omitted). Title insurance is designed to protect the insured from losses that occur through defects, liens, or encumbrances that burdened the insured's title at the time the insured takes title. *Fifth Mut. Bldg. Socy. Of Manayunk's appeal*, 176 A. 494, 495 (Pa. 1935). At the time Bluzenstein took title to the property, the property was encumbered by a real estate tax debt in the amount of $8,877.92.[2]

Therefore, Chicago title was obligated to cover Bluzenstein's loss as a result of the tax encumbrance. When it failed to cover Bluzenstein's loss, Chicago Title breached the title insurance contract.

As a result of Chicago Title's failure to cure the tax encumbrance, Bluzenstein's property was sold at sheriff's sale. Thus, Bluzenstein suffered damages in the amount of the property's value. Bluzenstein testified that the value of the property was $155,000; however, the HUD-1 reflects the sale price of the property to be $120,000. It is unlikely that Chicago Title would issue title insurance in an amount

---

2. The court notes that Bluzenstein paid $8,877.92 to Hallmark Abstract to cover the outstanding tax debt; however, it appears that Hallmark did not transmit the payment to the City of Philadelphia. At the time of the instant litigation, Hallmark Abstract had ceased doing business.

greater than the sale price of the property. For this reason, the amount that Bluzenstein may recover from Chicago Title is capped at $120,000.

Wherefore, for the reasons stated above, the court finds that defendant Chicago Title Insurance Company breached its title insurance policy with plaintiff Bernard Bluzenstein and as a result of said breach, Bluzenstein was damaged in the amount of $120,000.