## Schall v. Windermere Court Apartments

*Thomas More Marrone*, for plaintiffs.
*Gail White*, for defendants.

COLINS, *J.*, February 6, 2013—Before the court is the motion of the plaintiffs, Theodore Schall (Schall) and John Brendan Farley (Farley), to certify the following class in connection with their claims of negligence and private nuisance arising out of a January 10, 2011, fire at Windermere Court Apartments in Philadelphia:

All individuals who suffered property damage and/or property loss and/or loss of use and enjoyment of law and/or economic loss or physical deprivation of, and physical displacement from, residents as a result of the January 10, 2011 fire at the Windermere Court Apartments, and their subrogees, if any. Excluded from

the class are defendants and their directors, officers, past and present employees, partners, affiliates, and subsidiaries.

After a review of the briefs and arguments of counsel and the record, including the transcript of the class certification hearing on November 15, 2012, the court issues the following findings of fact and conclusions of law, and certifies the foregoing class with modifications that limit its members to residents, lessees and lawful guests of Windermere Court Apartments.

## FINDINGS OF FACT

1) This is a class action on behalf of individuals and entities that allegedly suffered losses as a result of a catastrophic fire and its aftermath at the Windermere Court Apartments (the Windermere), a multi-wing, four-story apartment building at the 4800 block of Walnut Street in Philadelphia, starting the night of January 10, 2011, and continuing into the morning of January 11, 2011. Exhibit WIND 19 (Joint Fire Report).[1]

2) The named plaintiffs are Theodore Schall and John Brendan Farley, former residents and tenants at the Windermere at the time of the fire that originated in the Windermere building on January 10, 2011. Exhibits P1 (Complaint) and P2 (Answer to the Complaint).

3) The defendants are Windermere Court Apartments, Windermere Court Management Corp., Keystone Management, LLC, Keystone Management Group, LLC,

---

1. Unless otherwise indicated, the court relies on the exhibit designations used by the parties at the November 15, 2011, hearing.

Yisroel "David" Ginsberg, Shalom ("Sam") Ginsberg, and Aron Ginsberg who together owned, possessed, controlled and/or management the Windermere.[2] *Id.*

4) Defendants Windermere Court Apartments, Windermere Court 2005, LP and Windermere Management Corp. owned and managed the Windermere, a multi-wing, four-story apartment building. *Id.*

5) Defendants Keystone Management, LLC and Keystone Management Group, LLC, possessed, controlled and/or managed the Windermere, as did David Ginsberg, Sam Ginsberg, and Aron Ginsberg. *Id.*

6) Defendants joined All Purpose Security (APS), a security guard service, as a defendant in this action on February 17, 2012. Transcript of the Class Certification Hearing, November 15, 2011 (N.T.) at 50.

7) On January 20, 2011, a fired originated in the Windermere. Exhibit P3 (City of Philadelphia Report of Fire Alarm). Complaint at ¶33.

8) The five-alarm fire required approximately 140 firefighters to bring it under control. Tenants' property was damaged by fire, smoke and/or water. In addition, tenant-owned property that remained in the wreckage in the aftermath of the fire was destroyed when the building ultimately was razed. Complaint ¶ 34; Exhibit P13; N.T. at 11-12, 32-38;.

9) Between 100 to 200 residents and/or tenants were

___

2. The defendants enumerated in paragraphs 3 through 5 shall be referred to collectively as "the defendants."

affected by the fire and its aftermath. Exhibit P13 (ATF Report); Exhibit P10 (Windermere Master Contact List).

10) Plaintiff Schall, who lived in Apt. 313B, claims property damage and loss in the amount of $52,874.58 and additional $4,378.76 in post-fire expenses. Exhibit P7 (expert repot of William Underkoffler (Underkoffler), Director of Adjusting, Metro Public Adjustment (Schall Report)); N.T. at 11-5 (Schall Testimony); N.T. at 143-59 (Underkoffler Testimony); Exhibit P8 (Schall's damages inventory).

11) Plaintiff Farley, who lived in Apt. B6, claims property damage and loss in the amount of $17,555.91. N.T. at 31, 143-59 (Underkoffler Testimony); N.T. at 32-38 (Farley testimony).

12) The exact location of the origin of the fire is disputed. N.T. at 106. Plaintiffs contend that it began in apartment 213B. Exhibit P13 (City of Philadelphia Report of Fire Investigation; Exhibit P4 (US Department of Justice, Bureau of Alcohol Tobacco Firearms and Explosives Report of Investigation (ATF Report)); Exhibit P12 (report of plaintiffs' expert, Paul J. Boerner, CFEI (Boerner Report)). Defendants claim that it started in the "south wall of the 'C' building, adjacent to a shaft way. Exhibit Wind 2 (schematic) and Exhibit 19 (Joint Fire Report).

13) C. Brent Harris, M.S., CFI, CFEI (Harris), plaintiffs' expert on the cause and origin of fires, fire safety, alarm, prevention, and suppression, testified that defendants' negligence included: failure to equip the

Windermere with a fire detection and suppression system, including a sprinkler system; an alarm system that was fully operational: and disabling of the alarm system once it did sound (thus thwarting the efforts of firefighters to find the location of the fire's origin). Exhibit P5 (Harris Report); N.T. at 78-94 (Harris' testimony).

14) Harris also testified that if the defendant had equipped Windermere with a functioning fire alarm system and sprinkler system, the damage at Windermere "would have consisted of smoke and fire damage to the area-of origin, preliminarily believed to be Unit 213B." Exhibit P5 (Harris Report) at 5; N.T. 81-83.

15) Finally, Harris testified that while his preliminary opinion is that the fire originated in Apt. 213B, any fire-modeling he performs for trial in this matter can take into account alternative fire-origin sites. N.T. at 81, 95, 97, 1109-111 (Harris' testimony).

16) Defendant APS provided the Windermere 24-hour, seven-day-a-week, security services staring on January 19, 2011, nine days after the fire, until February 8, 2011; starting about seven days later, APS returned to the Windermere to provide limited services. N.T. at 52-54; 57-58.

## CONCLUSIONS OF LAW

17) Rule 1702 sets for the requirements for certification of a class:

One or more members of a class may sue or be sued as representative parties on behalf of all members in a

class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

Pa.R.Civ.P. 1702.

18) Decisions regarding the certification of a class "should be made liberally and in favor of maintaining a class action." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 937 A.2d 503, 509 (Pa. Super. 2007) ("*Liss I*"), *aff'd*, 983 A.2d 652 (Pa. 2009) *("Liss II"); Janicik v. Prudential Ins. Co.*, 451 A.2d 451, 454 (Pa. Super. 1982).

19) The party seeking class certification bears the burden of proof which is "not heavy" because of Commonwealth policy favoring liberal recognition of class actions. *Janicik*, supra. at 454 (stating that "a strict burden of proof is inconsistent with the policy of our Commonwealth that 'decisions in favor of maintaining a class action should be liberally made.'").

20) Accordingly, the class proponent's burden is only that "evidence sufficient to make out a prima facie case 'from which the court can conclude that the...class certification requirements are met.'" *Liss I*, 937 A A.2d at 509.

21) The certification process "is designed to decide who shall be the parties to the action and nothing more." *Samuel-Basset v. KIA Motors America, Inc.*, 34 A.3d 1, 15-16 (Pa. 2011) ("*Kia*"); Pa.R.V.P. 1707 cmt.

22) The proponent is not required at the class certification stage to prove the merits of the substantive case. *Samuel-Bassett v. Kia Motors America, Inc.*, 68 Pa. D.& C. 4th 270, 2004 WL 2173324, *3 (Phila. C.P. November 10, 2004). Doubts concerning class certification should be resolved in favor of the class proponent. *Janicik*, 451 A.2d at 454.

23) Class representatives are not required to prove that the claims of all class members are identical. *Kia*, 34 A.3d at 23.

24) Where the most essential elements of the proposed class members' cause(s) of action may be proven through simultaneous class-wide evidence, class certification is preferred. *Id.* at 23.

25) Whether causation can be established on a class-wide basis is an issue for the finder of fact and the "plaintiff need not exclude every possible explanation so long as reasonable minds can conclude that the defendant's conduct was the proximate cause of harm[.]" *Kia*, 34 A.3d at 26.

26) Questions regarding the amount of individual damages do not preclude a class action. *Cambanis v. Nationwide Ins. Co.*, 501 A.2d 635, 640 (Pa. Super. 1985).

27) Where class actions implicate different damages among class members, trial courts have the power and authority to employ a variety of methods to manage the damages portion of the litigation. *Kia*, 34 A.3d at 29.

## Numerosity: Rule 1702(1)

28) To be certified, the proposed class must be "so numerous that joinder of all members is impracticable." Pa.R.Civ.P. 1702(1). When deliberating on numerosity, courts shall consider whether lawsuits by potential individual plaintiffs would pose an inordinate drain on the resources of both the courts and the litigants. *Janicik*, 451 A.2d at 456. Proof of the exact number of class members is not required so long as the class can be defined with sufficient specificity to enable the court to decide the practicality of joinder. *Id.* at 456.

29) The Windermere has 99 units and, at the time of the fire, approximately 100-200 people were residents. Exhibit P10 (Windermere Master Contact List).

30) The court finds that the class is of sufficient size to satisfy the numerosity requirement and rejects the Windermere defendants' contention that the requirement cannot be met where putative class members must prove actual damages with proof that is fact-intensive and individualized. Page 48, *Defendants' Memorandum in Opposition to Motion for Class Certification (Opposition*

*Memo)*. Defendants' reliance on *Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001) is misplaced. In Weinberg, the question facing the court was whether in a private cause of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 et seq., putative class members were required *on liability* to show *individual reliance* on what they claimed was statutorily-prohibited false advertising of the Ultra gasoline that they purchased from the defendants. 777 A.2d at 446. To the extent that plaintiffs' statutory claims required individual proof on their case on liability, *Weinberg* does not apply. [To the extent that defendants' numerosity analysis merges with the debate on "commonality," it is addressed below].

31) The court finds that that the numerosity requirement, Rule 1702(1), Pa.R.Civ.P. is satisfied.

Commonality: Rule 1702(2)

32) The questions of law or fact common to the class generally exist if the members' grievances arise out of the "same practice or course of conduct on the part of the class opponent." *Liss II*, 983 A.2d at 664.

33) Commonality is established by showing a "common source of liability." *Kia*, 34 A.3d at 22.

34) The court finds that the following issues concerning the origin and cause of the fire and the cause or causes of the spread of the fire are common as to all class members: (a) whether the defendants failed properly to select, install, inspect, operate, manage and/or maintain appropriate fire protection system(s) at the building; (b)

whether the defendants knew or should have known of its failures regarding its fire protection system(s); (c) whether the defendants' failures with regard to its fire protection system(s) caused, contributed to or failed to control the fire at the Windermere; (d) whether the fire and the subsequent suppression activities caused damage to the properties of the plaintiffs and class members; (e) whether defendants failed to take adequate steps to salvage or protect the property of the plaintiffs or class members; (f) whether the defendants were liable for any harm to the plaintiffs and class members; (g) whether defendants acted outrageously or with reckless indifference to the rights of the plaintiff and class members so as to warrant the imposition of punitive damages. All these issues go to the plaintiffs' prima facie claims and pertain to all class members; in short, the common question is whether the defendants' were negligent regarding the fire.

35) Defendants argue that a finding of commonality is foreclosed by the fact that (a) the class includes different groups of potential claimants, (b) the property claimed to have been damaged was located in different areas of the building, and (c) plaintiffs have alleged different types of damages (namely, fire, water, smoke, or theft). ¶¶ 123-126 of *Defendants' Proposed Findings of Fact and Conclusions of Law (Defendants' Findings)*.

36) Plaintiffs counter that defendants' subdivision of the class is artificial and that it is based inappropriately on the nature and extent of damage, rather than whether the defendants' negligence was the source of that damage.

37) The court finds that the questions of negligence

(the conduct of Windermere personnel, adequacy of smoke and fire detection, and alarm and sprinkler systems) are common to the class and that proof on these issues as to one is proof as to all. *Liss II*, 983 A.2d at 663 (stating that on the issue of commonality, facts must be substantially the same so that proof as to one claimant would be proof as to all). Regarding purported differences among class members, the court notes preliminarily that the class it certifies excludes insurance carriers and non-residents, leaving only residents of and lawful guests at the Windermere who suffered property loss. As to those members who remain — tenants, lessees, and guests who claim losses due to the fire — the liability issue is straightforward: were the defendants negligent in this case? The questions are simple: did the Windermere fail properly to instruct personnel regarding fire protocol; was its fire detection and alarm system inadequate; should it have had a sprinkler system? The answers to these questions are common to all class members and susceptible of a jury determination.

A fire is a complex thing and has complex consequences, and the defendants are correct that certain variables will affect determinations on damages: which residents had insurance, which did not; was property damaged by fire, smoke, water, or theft, or was it destroyed when the building was razed? But the underlying question — were defendants negligent — is the same for all. It is addressed with evidence of the defendants' practices and systems, findings as to which will be the same for everyone.

Questions of negligence, causation and damages are

sometimes blurred and inseparable. In this case, however, all subsidiary questions flow from the single inquiry: did defendants breach a duty of care owed to their residents and lessees? Only when this question is answered can the trial proceed on the other matters. It is a singular benefit of class action treatment that this question be asked and answered *once*, thereby averting inconsistent negligence findings that otherwise would flow from individual lawsuits.

Defendants really are arguing that the class members' damages claims are not common. That is true. Class action litigation, however, long has afforded courts a variety of means to manage and administer damages claims when liability has been established. *Kia*, 34 A.3d at 29 (where damages require individualized treatment, the court has available a variety of methods to manage remedies while protecting the defendant's rights). This case presents nothing that militates against use of such methods. Balanced against the burden on our resources occasioned by individual trials for each claimant, this court finds that class action is the superior approach.

The fire case on which defendants rely, *In Re: One Meridian Plaza Fire Litigation (Meridian)*, 1993 U.S. Dist. LEXIS 9841 (E.D.Pa. 1993), is not controlling. In *Meridian*, decided pursuant to Rule 23, Fed. R.C.P., the plaintiffs sought certification of five different classes whose members allegedly suffered losses due to a catastrophic fire at Meridian Plaza in Philadelphia in February of 1991. Unlike the proposed class in this case, the classes in *Meridian* included building owners, tenants,

employees of tenants, and businesses located not in the building itself, but in various parts of the community. More important, the *Meridian* case was brought against numerous defendants and each was charged with playing a different role in the subject fire. The court ruled that class treatment was not "superior to other available methods" because, among other reasons, the differing liability claims as to each defendant presented insurmountable difficulties in adjudicating the controversy. *Id.* at \*25-28. Here, plaintiffs charge only that the Windermere was negligent and the proposed class, as modified by the court, consists of a discrete, definable group of individuals. This is a case in which the court easily may "envision the form that a trial on [the] issues would take." *Kia,* supra. at 15-16 (quoting *Hohider v. United Parcel Serv.*, 574 F.3d 169, 175-76 (3d Cir. 2009).

38) The court finds that questions of law and fact are common to the members of the class as required by Rule 1702(2), Pa.R.Civ. P.

## Typicality: Rule 1702(3)

39) Rule 1702(3) requires that "[t]he claims...of the representative parties [be] typical of the claims... of the class." Pa.R.Civ.P. 1702(3). The purpose of the typicality requirement is "to determine whether the class representatives' overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that [his/her] pursuit of [his/her] own interest will advance those of the proposed class members." *D'Amelio v. Blue Cross of Lehigh Valley*, 500 A.2d 1137, 1146 (Pa. Super. 1985).

40) While the class representatives' claims have to arise out of the "same course of conduct and involve the same legal theories as those of other members of the class," they do not have to be identical. *Kia*, 34 A.3d at 31. Typicality may be found despite the existence of factual distinctions between the claims of the named plaintiff and those of the proposed class. *Id.*

41) Defendants argue that Schall and Farley have claims that are not typical of that of the class because their claims that their property was destroyed by the fire itself differs from the claims of those whose property survived or was damaged instead by smoke, water or demolition. This argument is difficult to dissect. If a class member's property survived, he or she will have no claim; if it was destroyed by the fire and *any of its natural consequences* (smoke, fire, demolition), he or she will be put to the proof when it comes time assess damages. The differences in damages claims do not defeat a finding of typicality. *Kia*, 34 A.3d at 31.

42) Defendants also argue that damages flowing from inadequate systems (fire and smoke alarms, sprinkler system) will vary depending on the location of each class member's property in relation to the fire's origin and that therefore Schall and Farley cannot adequately represent their interests. ¶ 124, *Defendants' Findings*. This argument is no different from, and no more persuasive, that the argument that differences in the *type* of damage militate against class action. If a jury finds that the defendants were negligent, all class members will have the same opportunity as Schall and Farley to establish factual

causation and the nature and extent of their damages, and defendants will have the opportunity to launch any defense that might be appropriate (for example, lease terms, insurance, mitigation, unjust enrichment, and so on). Schall's and Farley's damages claims do not have to be identical to those of all class members; they need show only that their overall position "on the common issues," namely negligence, is sufficiently aligned with that of the class so that it can be said that the plaintiffs' interest will advance those of the class. *Janicik*, 451 A.2d at 457.

43) The court finds that plaintiffs have met their burden on the "typicality" perquisite to class certification under Rule 1702(3).

Adequacy of Representation: Rule 1702(4)

44) Rule 1702(4) requires that the class representative(s) "will fairly and adequately assert and protect the interests of the absent class members." Pa.R.Civ.P. 1702(4).

45) When determining whether the plaintiffs in this case have satisfied Rule 1702(4), the court's considerations include (a) whether the attorney for the representative party will adequately protect the class' interest; (b) whether the representative party has a conflict of interest in maintaining the cause of action; and (c) whether the representative party has or can acquire adequate financial resources. Pa.R.Civ. 1709.

46) There is no genuine dispute as to the adequacy of the skills and experience of plaintiffs' counsel, nor is there any contention that plaintiffs and their attorney do not have adequate financial resources to maintain this class action.

As already explained, the court also finds no evidence or persuasive argument that the named plaintiffs have a conflict of interest with members of the proposed class.

47) The court finds that plaintiffs have met their burden to show that they adequately represent the members of the class as required by Rule 1702(4), Pa.R.Civ.P.

### Fair and Efficient Method for Adjudicating This Controversy: Rule 1702(5).

48) Rule 1702(5) provides that a class action may be maintained if it "provides a fair and efficient method for adjudication of the controversy" under the criteria set forth in Rule 1708. Pa. R.Civ.P. 1702(5). Rule 1708 provides that the court shall consider whether: common questions of law and fact predominate (R. 1708(a)(1)); class action is manageable (Rule 1708(a)(2)); there is a risk of inconsistent adjudication in the absence of class certification (Rule 1708(a)(3)); the extent and nature of other litigation (Rule 1708(a)(4)); the particular forum is appropriate for litigation of the class claims (1708(a)(5)); the complexity of issues and expenses of litigation would likely deter separate actions (Rule 1708(a)(6)); there is no likelihood of de minimis recovery (Rule 1708(a)(7)); and the defendant's generally applicable conduct (Rule 1708(b)(2)).

49) This class action satisfies the requirements of Rule 1702. The class is not burdensomely large. As tenants and lessees, its members are easily identifiable and to the extent that their damages claims are distinct, the court has at its disposal a variety of means to manage them, including the

appointment of a special master.

50) The court also finds that in the absence of class certification separate actions on behalf of individual claimants pose a substantial risk of inconsistent adjudications. On liability there are factual disputes regarding: the origin of the fire; whether Windermere personnel acted properly under the circumstances; whether fire safety systems were adequate; and whether there should have been a sprinkler system. These issues are complex and require expert analysis which likely would differ in individual actions, resulting in substantive determinations on negligence that cannot be reconciled with each other. The only other lawsuit arising out of this fire, the prosecution of which the court finds in insufficient to defeat class certification, illustrates the risk; it presents a different theory of the origin of the fire than those presented in this case.

51) The court finds that the same complex issues requiring expert analysis also would likely deter separate action. The plaintiffs, whose apartments were close to the fire's origin (wherever it was) testified to losses exceeding $57,000 and $17,000, respectively. Such losses, while significant to the plaintiffs, are not so large as to offset the substantial and duplicative costs of requiring putative class members to pursue their claims individually.

52) At the same time, the plaintiffs' losses demonstrate that the aggregate recovery of all the class members is not likely to be de minimus. (Rule 1708(a)(7)); *Baldassari v. Suburban Cable TV Co.*, 808 A.2d 184, 195 (Pa. Super. 2003) (though individual claims may be small, the

aggregate recovery might deter future violations by the defendant).

53) The court finds that class treatment is a fair and efficient method of adjudicating this controversy under Rule 1792(5), Pa.R.Civ.P.

### Defendants' claims against joined-defendant All Purpose Security

54) Neither plaintiff claims to have lost property *to theft* in the aftermath of the fire and neither claimed to have any knowledge of anyone else who did. N.T. at 28-29; 54.

55) There is no evidence that APS had any connection with the cause of the fire or any of its consequences. *Id.* at 29-30.

56) Plaintiff does not seek class certification as to APS and the court declines to do so.

### Limitations on the Proposed Class

57) The court finds that the class proposed by the plaintiffs includes, by implication, persons whose claims are unclear, remote and speculative: subrogees and non-residents who may have suffered some collateral damage from the fire and its aftermath. Accordingly, the court certifies the class as to the Windermere defendants **only** as follows:

> All tenants, lessees, and sub-lessees who suffered property damage and/or property loss (including loss of or damage to property in their possession in their residential units, but belonging to their lawful guests or

invitees), and/or loss of use and enjoyment of land and/or economic loss and/or physical deprivation of, and physical displacement from, the residences as a result of the January 10, 2011, fire at the Windermere; and all lawful guests and invitees present at the Windermere on January 10, 2011, and who suffered property loss or damage as a result of the fire.

Excluded from the class are defendants and their directors, officers, past and present employees, partners, affiliates and subsidiaries.

The court enters the following order:

## ORDER

And now, February 6, 2013, upon consideration of the plaintiffs' *motion for class certification*, any response thereto, and after taking testimony and evidence at a class certification hearing on November 15, 2012, it is ordered that the *motion* is granted and the class is certified, with modifications, as to the Windermere defendants **only**.

The certified class is as follows:

All tenants, lessees, and sub-lessees who suffered property damage and/or property loss (including loss of or damage to property in their possession in their apartments, but belonging to their lawful guests or invitees), and/or loss of use and enjoyment of land and/or economic loss and/or physical deprivation of, and physical displacement from, the residences as a result of the January 10, 2011, fire at the Windermere; and all lawful guests and invitees present at the Windermere

on January 10, 2011, and who suffered property loss or damage as a result of the fire.

Excluded from the class are defendants and their directors, officers, past and present employees, partners, affiliates and subsidiaries.