**LISS & MARION, P.C., Appellee**

v.

**RECORDEX ACQUISITION CORP.
and Sourcecorp Incorporated,
Appellant.**

Superior Court of Pennsylvania.

Argued March 28, 2007.
Filed Nov. 28, 2007.

Don P. Foster, Philadelphia, for appellants.

Alan M. Feldman and Thomas M. Marrone, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J., GANTMAN, J., and McEWEN, P.J.E.

OPINION BY McEWEN, P.J.E.:

¶ 1 Appellant, Recordex Acquisition Corp. (hereinafter "Recordex"),[1] appeals from the judgment of $594,301.05 entered against it and in favor of appellee, Liss & Marion, P.C., on behalf of itself and other similarly situated individuals and entities. Appellee, in this class action lawsuit, sought recovery of the excessive fees charged by Recordex for the copying of medical records which the members of the class had either requested or subpoenaed from a health care provider. We affirm.

¶ 2 The Pennsylvania legislature, in 1986, enacted 42 Pa.C.S. §§ 6151–6160, commonly known as the Medical Records Act ("the Act"), in order to allow litigants to use certified copies of medical records in any trial, hearing, deposition or other judicial or administrative proceeding in lieu of the original records, and without providing preliminary testimony as to foundation, identity and authentication of the records. *See:* 42 Pa.C.S. § 6151. The Act also mandated the prices to be charged for such copies by health care providers or their designated agents:

> . . . The payment shall not exceed $15 for searching for and retrieving the records, $1 per page for paper copies for the first 20 pages, 75¢ per page for pages 21 through 60 and 25¢ per page

---

1. The other named appellant, Sourcecorp Incorporated, is the parent corporation of Recordex Acquisition Corp. Therefore, we will refer to Recordex as the sole appellant/defendant.

for pages 61 and thereafter; $1.50 per page for copies from microfilm; plus the actual cost of postage, shipping or delivery. *No other charges for the retrieval, copying and shipping or delivery of medical records other than those set forth in this paragraph shall be permitted without prior approval of the party requesting the copying of the medical records . . . .*

42 Pa.C.S. § 6152(a)(2)(i) (emphasis supplied).[2]

¶ 3 Although the Medical Records Act refers only to copies made from paper originals or from records stored on microfilm, hospitals and health care providers now routinely store medical records using other forms of electronic media, such as digital storage devices. Recordex conceded that it charged, as a matter of company policy, the microfilm rate for copies of records stored electronically. Appellee contends that this practice was in violation of the Act, and, on February 10, 2003, filed a class action complaint on behalf of all individuals and entities that had requested or subpoenaed medical records from a health care provider and paid the microfilm rate for copies that were stored electronically.[3] Shortly thereafter, appellee filed an amended complaint, and a second amended complaint. The second amended complaint, filed on April 28, 2003, contained the following five counts: (1) viola-

tion of the Medical Records Act, 42 Pa.C.S. § 6152, (2) negligent misrepresentation and/or fraud, (3) violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et seq.,* (4) breach of fiduciary duty and/or confidential relationship, and (5) breach of implied contract. Recordex filed timely preliminary objections in the nature of a demurrer to all counts. Following argument, the esteemed Judge C. Darnell Jones, II, by order dated November 14, 2003, sustained in part and overruled in part Recordex' preliminary objections, dismissing with prejudice four of the five counts listed in the complaint, leaving appellee's allegation of breach of implied contract as the only count to survive preliminary objections.

¶ 4 Appellee, in March of 2004, filed a motion for class certification, and a certification hearing was held before the learned Judge Mark I. Bernstein, on May 3, 2004. Although Judge Bernstein denied certification to the proposed class of the individual plaintiffs whose medical records were requested,[4] he granted certification to the following class:

> All individuals and entities who, with respect to a request or subpoena for medical records or charts of health care provider or employee of any health care provider licensed under the laws of the Commonwealth of Pennsylvania, were

**2.** These amounts have been periodically adjusted by the Secretary of Health. Effective January 1, 2007, the charge for copies of medical records may not exceed: $18.54 for searching and retrieving records, $1.25 per page for paper copies for pages 1–20, $.93 per page for pages 21–60, $.31 per page for pages 61 and thereafter, and $1.83 per page for copies from microfilm. 36 Pa.B. 7685.

**3.** Karen and Timothy McShane were also named plaintiffs, representing the interests of plaintiffs in personal injury lawsuits whose attorneys were charged the microfilm rate for electronically stored records. However, class

certification was eventually denied as to the individual litigants since the trial court determined that "the individual injured plaintiffs' claims [were] 'derivative' of the law firm's class claims . . . [and that t]he interests of the members of this class can and will be fully protected by the other . . . class[,] the attorneys who requested and paid for medical records because they represented the injured plaintiffs in their original cases." Trial Court Memorandum Opinion, July 9, 2004, pp. 9–10.

**4.** *See: supra,* note 3.

billed for or paid to one or both of the defendants either or each of the following: (1) a charge for copies of records greater than the amounts prescribed by the Secretary of Health under the Medical Records Act ("MRA"), 42 Pa. Cons. Stat. Ann. Section 6152 et seq.; and (2) an unauthorized and/or unreasonable charge for copies from media not specifically provided for in the MRA. The class shall exclude class counsel, their law firm, and any lawyer or employee of their law firm.

Order, July 9, 2004. Recordex filed a motion for reconsideration, which was promptly denied by the trial court.

¶ 5 Appellee filed a motion for summary judgment on April 13, 2005. Less than one month later, Recordex filed a memorandum in opposition to appellee class's motion, and a cross-motion for summary judgment. By order dated June 9, 2005, the trial court granted the motion of appellee, and entered judgment "in favor of the plaintiff class and against the defendants, in an amount to be determined following a full accounting, at defendants' expense, of all sums defendants overbilled the class members." [5]  Order, June 9, 2005. The trial court further directed Recordex to provide to appellee a computerized list of the following information: [6]  (1) the name of the requesting class member, (2) the name of the person or entity for whom the records were requested, and (3) the number of non-microfilm pages produced and

charged at microfilm rate. Although Recordex filed a motion requesting that the trial court certify the class certification order for interlocutory appeal, the trial court declined to do so. A nonjury trial on damages was thereafter held and, on November 29, 2005, the trial court entered a verdict for appellee and against Recordex in the amount of $479,472.59. Recordex filed a timely motion for post trial relief that was denied by the trial court. Appellee also filed a motion for post trial relief, requesting that the court mold the verdict to include prejudgment interest. The trial court granted the motion and, by order dated June 14, 2006, molded the verdict to include interest in the amount of $114,828.46. Thereafter, on June 28, 2006, judgment on the molded verdict was entered in the amount of $594,301.05 in favor of appellee and against Recordex. This timely appeal followed.[7]

¶ 6 Recordex, in the brief it filed in support of this appeal, raises the following seven questions for our review: [8]

> Whether appellee class sustained its burden of meeting the prerequisites of Pa.R.C.P. 1702 and 1708 for certification as a class action?

> Whether the Medical Records Act, 42 Pa.C.S. § 6151 et seq. ("the Act"), permits a private cause of action for breach of contract in which the Act is an implied term?

---

**5.** Specifically, the trial court determined (1) that the Medical Records Act was an implied term of the parties' contract, (2) that the Medical Records Act provided only two rates for copies of medical records, one rate for copies made from paper originals and a higher rate for copies of records stored on microfilm, and (3) that Recordex violated the terms of the Act by billing for copies stored in electronic media at the higher rate for copies of records stored on microfilm. *See:* Trial Court Opinion, November 27, 2006.

**6.** In the alternative, the court directed Recordex to "produce copies of all applicable invoices." Order, June 9, 2005.

**7.** It bears mention that Recordex complied with the trial court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

**8.** We have reordered the questions raised by Recordex for purposes of disposition.

Whether the Act requires that the charge for reproducing records stored in electronic format be billed at the rate set in the Act for records stored in paper format?

Whether there was a contract between the parties in which Recordex committed to statutory rates for records stored on paper when it produced records stored electronically?

Whether appellee class's cause of action is barred by the voluntary payment doctrine?

Whether appellee class sustained its burden of proving its damages when it failed to provide expert witness support for its statistical computation of the number of electronically stored pages?

Whether the [trial] court improperly assessed prejudgment interest?

Brief of Appellant, p. 6.

■■■ ¶ 7 Recordex first challenges the order of the trial court granting class certification. A trial court is vested with broad discretion in determining whether the criteria for maintaining a class action have been met, and its decision "will not be disturbed on appeal unless the court neglected to consider the requirements of the rules governing class certification, or unless the court abused its discretion in applying the class certification rules." *Baldassari v. Suburban Cable TV Co., Inc.*, 808 A.2d 184, 189 (Pa.Super.2002), *appeal denied*, 573 Pa. 694, 825 A.2d 1259 (2003) (citations omitted). Moreover, "[i]t is the strong and oft-repeated policy of this Commonwealth that, in applying the rules for class certification, decisions should be made liberally and in favor of maintaining a class action." *Id.* (citation omitted).

■■■ ¶ 8 Pennsylvania Rule of Civil Procedure 1702 sets forth five prerequisites for maintaining a class action, namely: numerosity, commonality, typicality, adequacy of representation, and manageability. The Rule, in quite specific fashion, recites:

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

Pa.R.C.P. 1702. The burden of proof at the class certification hearing is on the party seeking certification, who must demonstrate *each* of the five elements before a class can be certified. *Weismer by Weismer v. Beech–Nut Nutrition Corp.*, 419 Pa.Super. 403, 615 A.2d 428, 430 (1992). However, "[t]he proponent need only present evidence sufficient to make out a *prima facie* case from which the court can conclude that the five class certification requirements are met." *Baldassari v. Suburban Cable TV Co., Inc., supra*, 808 A.2d at 189 (internal quotations and citation omitted). Moreover, as the Comment to Pennsylvania Civil Procedure Rule 1707 declares, the class certification hearing "is confined to a consideration of the class action allegations," and "the merits of the action and the right of the plaintiff to recover are to be excluded from consideration." Pa.R.C.P. 1707, Explanatory Comment. *See also: Baldassari, supra*, 808 A.2d at 189–190.

¶ 9 As noted above, the trial court here certified the following parties as the class:

All individuals and entities who, with respect to a request or subpoena for medical records or charts of health care provider or employee of any health care provider licensed under the laws of the Commonwealth of Pennsylvania, were billed for or paid to one or both of the defendants either or each of the following: (1) a charge for copies of records greater than the amounts prescribed by the Secretary of Health under the Medical Records Act ("MRA"), 42 Pa. Cons. Stat. Ann. Section 6152 et seq.; and (2) an unauthorized and/or unreasonable charge for copies from media not specifically provided for in the MRA. The class shall exclude class counsel, their law firm, and any lawyer or employee of their law firm.

Order, July 9, 2004.

¶ 10 Recordex first argues that the trial court's description of the class was overbroad because the evidence presented at the class certification hearing revealed a class consisting only of lawyers and law firms, but the class, as defined, included non-attorney requesters, such as, "individuals who requested their own medical records, insurance companies . . . and medical copy services requesting records on behalf of a third party, often law firms representing clients." Brief of Appellant, p. 55. Recordex contends that this overly broad class fails to satisfy the prerequisites of commonality and typicality, since these non-attorney requesters may have negotiated their own rates for copying charges with Recordex.

¶ 11 Recordex' argument is quite simply a diversion. Although the class is *not* limited to lawyers and law firms, it *is* limited to those individuals or entities that (1) subpoenaed, under the Medical Records Act, medical records that were intended to be used in "any trial, hearing, deposition or other judicial or administrative action or proceeding, whether civil or criminal, in lieu of the original charts or records,"[9] and (2) were overbilled for copies of those records. Those entities that negotiated their own rates for copying charges, and therefore provided *prior approval* of those rates, would not fall within the class, since they would not have been *overbilled.* Moreover, an individual who simply wants a copy of his or her own medical records for personal use would not fall within the rubric of the Medical Records Act. Thus, we conclude that the class definition was not overbroad.

¶ 12 Similarly, we reject Recordex' claims that appellee failed to meet the prerequisites of commonality and typicality. As Judge Bernstein cogently summarized in his Memorandum Opinion filed in support of class certification:

The only claim presented herein is a single question of law as to the proper interpretation of 42 Pa.C.S. § 6152. This question of statutory interpretation presented is did the legislature, in enacting the Medical Records Act, which all parties concur is applicable to these charges, intend electronically retrieved copies, not explicitly mentioned in the Act, to be charged at the rate for paper copies or the rate for copies from microfilm. Beyond that question of interpretation of law the only issues presented are the mathematical calculation of overcharges to and overpayment by each member of the Class. The only issue presented is the interpretation of the law to the charges incurred for electronically retrieved records.

9. 42 Pa.C.S. § 6151.

The claim presented satisfies the commonality requirement of Rule 1702(a)(2).

Trial Court Memorandum Opinion, July 9, 2004, p. 13. Moreover, Recordex acknowledged that it routinely, as a matter of company policy, charged the statutory rate for copies from microfilm when it actually retrieved the records from other electronic media. Therefore, the claims of appellee were typical of the claims of both attorneys and non-attorneys who were routinely overcharged. Accordingly, we detect no basis upon which to disturb the trial court's decision to grant class certification in this case.

■ ¶ 13 The next four questions raised by Recordex on appeal challenge the order of the trial court granting summary judgment in favor of appellee. The Pennsylvania Rules of Civil Procedure provide that summary judgment will be granted "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]" Pa.R.C.P. 1035.2(1). Here, the trial court concluded that, since Recordex admitted that it routinely charged the statutory rate for copies from microfilm when it produced copies from other electronic media, the only question was one of statutory interpretation, namely "whether the defendants violated the [Medical Records Act] when they billed the microfilm rate for copies made from non-microfilm media." Trial Court Opinion, November 27, 2006, p. 7.

¶ 14 Our standard in reviewing an order granting a motion for summary judgment is well settled.

An appellate court may reverse the grant of a motion for summary judg-

ment if there has been an error of law or an abuse of discretion. Since the issue as to whether there are no genuine issues as to any material fact presents a question of law, our standard of review is *de novo;* thus, we need not defer to the determinations made by the lower tribunals. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. We must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Chanceford Aviation Properties, LLP v. Chanceford Township Bd. Of Supervisors,* 592 Pa. 100, 107, 923 A.2d 1099, 1103 (2007) (citations omitted).

¶ 15 The issues raised by Recordex in questions two, three and four are intermingled and we will, therefore, address them together. Recordex argues that the Medical Records Act does not provide for a private cause of action for breach of contract when the Act is an implied term of a contract. It further contends that there was no contract between Recordex and the class members, but only contracts between Recordex and the hospitals for which it provided copying services. Additionally, Recordex argues that, even if the invoices they submitted to the class members constituted contracts, those contracts contained no agreement between the parties to charge the paper rate for copies of records stored electronically. Finally, Recordex contends that the payment of the invoices by the class members constituted "prior approval" of the charges as contemplated in the Act.[10]

---

10. *See:* 42 Pa.C.S. § 6152(a)(2)(i) ("No other charges for the retrieval, copying and shipping or delivery of medical records other than those set forth in this paragraph shall be permitted without *prior approval* of the party requesting the copying of the medical records.") (emphasis supplied).

¶ 16 It bears emphasis at the outset of our consideration of Recordex' arguments that, contrary to its characterization of this class action suit, summary judgment was *not* granted in favor of appellee for a violation of the Medical Records Act. In fact, although the Second Amended Complaint included a cause of action for such a violation, the trial court dismissed that count following preliminary objections. *See:* Trial Court Memorandum Opinion, November 14, 2003, p. 2. Recordex argues, however, that despite the court's ruling, appellee has attempted to "avoid the statutory bar through the artifice of pleading an implied contract[.]" Brief of Appellant, p. 22. We disagree with this characterization of appellee's claim.

¶ 17 It is well settled that "[t]he laws that are in force at the time the parties enter into a contract are merged with the other obligations that are specifically set forth in the agreement." *Empire Sanitary Landfill, Inc. v. Commonwealth, Department of Environmental Resources,* 546 Pa. 315, 340, 684 A.2d 1047, 1059 (1996). *See also: DePaul v. Kauffman,* 441 Pa. 386, 398, 272 A.2d 500, 506 (1971). Here, there is no dispute that the Medical Records Act was in force at the time Recordex invoiced the class members for the copying of medical records relevant to this dispute. Therefore, the trial court properly concluded that the billing limitations set forth in the Act were implicitly included in any agreement entered into by the parties. To conclude otherwise would render the billing limitations prescribed by the legislature meaningless.

¶ 18 Recordex also argues, however, that it did not breach any contract with the class members since no contract existed between the parties. Recordex further contends that, since it was simply an agent of the hospitals, it "is not liable for any acts done within the scope of its authority for and on behalf of a disclosed principal." Brief of Appellant, p. 29.

¶ 19 This argument of Recordex fails to acknowledge that it admitted, for purposes of summary judgment, that "[t]he invoices [it] sent to the class plaintiffs are *contracts.*" Plaintiff's Admitted Facts for the Court's Consideration in Ruling Upon the Parties' Cross Motions for Summary Judgment, May 20, 2005, ¶ 3 (emphasis supplied).[11] Therefore, Recordex may not now avoid the trial court's finding that it breached an implied term of the contract with the class members by claiming that a contract between the parties never existed.

¶ 20 Recordex also argues that, even if we conclude that the invoices it submitted to the class members constituted contracts, as Recordex itself has admitted, and accept, as well, that the Medical Records Act was an implied term of those contracts, neither the contracts nor the Act require that Recordex bill at the lower paper rate for copies of electronically stored medical records. Alternatively, Recordex contends that the class members tacitly "approved" its pricing by paying the invoices without complaint.

¶ 21 Judge Bernstein, in his opinion filed pursuant to Pa.R.A.P. 1925(a), explained that the language of the statute is clear:

> The statute provides for only two rates, a rate for paper copies and a higher charge for copies from microfilm. The legislature clearly intended that the cost

11. It bears mention that, although this document was drafted by appellee, and Recordex filed a response disputing several of the "admitted facts" listed in the stipulation, Recordex did *not* dispute the "fact" that its invoice constituted a contract. *See:* Defendants' Response to Plaintiff's Admitted Facts for the Court's Consideration in Ruling Upon the Parties' Cross Motions for Summary Judgment, June 9, 2005.

of turning microfilm copies into paper warranted a higher per page charge. No testimony whatsoever was offered that creating paper copies from electronic medium as opposed to copying paper copies from other paper copies required any increased costs. Indeed it is counter-intuitive to think that any costs are increased. The costs of producing a paper copy of medical records from electronically stored medical records is cheaper than the cost of producing a copy from even paper medical records because there is no need to disassemble records, feed records into a copier, and reassemble both the original and the copy. When producing paper records from an electronic format one needs only to print them.

Trial Court Opinion, November 27, 2006, p. 7.

¶ 22 While the Act does not specifically provide billing limitations for copies of medical records stored in electronic media, it does mandate that: "No other charges for the retrieval, copying and shipping or delivery of medical records other than those set forth in this paragraph shall be permitted *without prior approval of the party requesting the copying of medical records.*" 42 Pa.C.S. § 6152(a)(2)(i)(emphasis supplied). Here, Recordex, the designated agent of the health care provider from which the medical records were

requested,[12] was in the best position to know that the hospital's retrieval system did not fit into either of the statutorily designated categories, and, thus, was aware or should have been aware that it had the duty to seek prior approval of any charges for the copying of medical records not specifically provided for in the Act. Recordex, however, failed to do so, and, therefore, must bear responsibility for its own dereliction.[13]

■ ¶ 23 Moreover, Recordex' contention that the class members tacitly provided "prior approval" of the pricing by their payment of the invoices without complaint similarly fails. The invoices Recordex sent to the class members did not *clearly specify* that Recordex was providing copies from records electronically stored at the price for copies of records stored on microfilm. Indeed, the two sample invoices attached to the Second Amended Complaint describe the charge as "FICHE/OPTICAL COPY CHARGE" and "FICHE/IMAGE COPY CHARGE." *See:* Second Amended Complaint, April 28, 2003, Exhibits C and D. At best, the invoices may be described as misleading. The health care provider, by the terms of the Act, was under an obligation to limit its charges for copies of medical records to those mandated in the Act, or to seek prior approval of a higher charge from the party requesting the rec-

**12.** Recordex' claim that the Medical Records Act applies *only* to health care facilities is specious. The subsection of the Act which mandates the billing limitations at issue here, specifically provides that "the health care providers or facility *or a designated agent* shall be entitled to receive payment of … expenses before producing the charts or records." 42 Pa.C.S. § 6152(a)(2)(i). As a "designated agent" of the hospitals from which records were subpoenaed, Recordex was limited to charging for copies of medical records by those figures set forth in the Act.

**13.** It bears emphasis that the trial court, in its opinion, stated that "[n]o testimony whatsoever was offered that creating paper copies from electronic medium as opposed to copying paper copies from other paper copies required any increased costs." Trial Court Opinion, November 27, 2006, p. 7. Although the plaintiff bears the burden of proof in a civil action, here, the class members "proved" that they were charged microfilm rates for copies made from records *not* stored on microfilm. Thus, the burden then shifted to Recordex to demonstrate that copies of records stored electronically justified an increased cost.

ords. Recordex, as the health care provider's designated agent, was under that same obligation.

¶ 24 In its final challenge to the trial court's grant of summary judgment, Recordex argues that the claims of appellee should have been barred by the voluntary payment defense. While there is not an abundance of appellate discussion of this defense, essentially, the voluntary payment defense provides that "[w]here, under a mistake of law, one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered." *Acme Markets, Inc. v. Valley View Shopping Center, Inc.*, 342 Pa.Super. 567, 493 A.2d 736, 737 (1985), *citing Ochiuto v. Prudential Insurance Co. of America*, 356 Pa. 382, 384, 52 A.2d 228, 230 (1947). Recordex contends that the defense applies in the present case since Ricky Liss, shareholder of class representative Liss & Marion, P.C., testified that he was aware of the Medical Records Act at the time he received the invoices in question, and that he paid the invoices without complaint.[14] *See:* Oral Deposition of Ricky L. Liss, February 25, 2004, pp. 35–39, 60–62.

¶ 25 The voluntary payment defense, however, is inapplicable when money is paid by a person *without* "full knowledge of the facts." *Acme Markets Inc., supra*, 493 A.2d at 737. That caveat applies here since Recordex, by identifying copies of records stored in electronic media as "FICHE/IMAGE" or "FICHE/OPTICAL," certainly misled the recipients of copied records as to the source of the copies for which it was being charged. Accordingly, we detect no basis upon which to disturb the trial court's grant of summary judgment in favor of appellee.

¶ 26 Recordex next contends that the damages award was not sustainable since appellee failed to provide expert witness testimony supporting its statistical computation of the number of copies from electronically stored records that were billed at the rate for copies from microfilm. When reviewing an award of damages, we are mindful that:

> The determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses.
>
> Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

*Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564–565 (Pa.Super.2004), quoting *Judge Technical Services, Inc. v. Clancy*, 813 A.2d 879, 885 (Pa.Super.2002).

¶ 27 The trial court, in its order granting summary judgment in favor of appellee, directed Recordex to provide to appellee a "full accounting ... of all sums defendants overbilled the class members," in the form of a computerized list containing the following information: (1) the name of the requesting class member, (2) the name of the person or entity for whom the records were requested, and (3) the number of

---

14. Recordex contends that the actions of Liss were typical, and emphasized that, although it was charging the higher microfilm rate for scanned documents, *"not one* of the class members complained or went to court to compel compliance with the Act." Brief of Appellant, p. 44 n. 18 (emphasis in original).

non-microfilm pages produced and charged at microfilm rate. *See:* Order, June 9, 2005. In the alternative, the court directed Recordex to "produce copies of all applicable invoices." *Id.* Appellee, in July of 2005, filed a motion for sanctions, contending that Recordex had not supplied complete and accurate information pursuant to the trial court's directive. In response, the trial court appointed a special master to resolve the discovery dispute.

¶ 28 By the time of the trial on damages, Recordex had supplied appellee with, what it certified to be, a "complete and accurate" report of the information necessary to assess the damages suffered by the members of the certified class. *See:* Certification of Completeness, Exhibit 3. The report listed, for each relevant class member, the number of pages copied from electronically stored records, *i.e.,* "optically scanned," that were billed at the rate for copies from microfilm. However, Recordex acknowledged that it had failed to designate that certain records were copied from electronically stored media for a considerable period of time. Therefore, counsel for Recordex included in the report a calculation defined as the "calculated optical." Counsel described that calculation during trial as follows:

> [D]uring the early part of this case, we found out that for some hospitals for a particular period of time, that when a request came in, because fiche and optical were being billed at the same rate, the data inputters, even if it was in fact an optical record, dropped that page count into the fiche column. So, we were faced with a period of time for some of these hospitals where we knew even though the report showed zero op-

tical, there was a likelihood that some part of all of that universe ... had to have been [optical copies]....

> So I was faced with providing a report that had some number with requests that we knew had at least a possibility of having some optical count. And so I, [counsel for Recordex], *arbitrarily,* in order to meet the demands of that order, *without any consultation of an expert,* but just thinking about what would be a reasonable way to come up with some basis for calculating an optical, decided that what we would do is the following: We did have statistics for the relevant time period that identified the total universe of one hundred percent of hospital records in the hospital; what percent was paper, what percent was fiche, and what percent was optical....

> So we applied that number to whatever the number was in the fiche column and as a result, we came up with a calculated page count[.]

N.T., October 20, 2005, pp. 26–29 (emphasis supplied).[15]

¶ 29 Recordex now, on appeal, challenges the reliability of the "calculated optical" component of the damages award, arguing that appellee should have provided expert testimony attesting to the reasonableness of this methodology. However, the "calculated optical" component of the damages award was based on Recordex' own calculations, and was submitted to the court in response to its directive to provide a "full accounting ... of all sums defendants overbilled the class members." Order, June 9, 2005. Counsel for appellee accepted the "calculated optical" compo-

---

**15.** The damages award was derived from determining the differential between the total "microfilm" charge for the number of known pages copied from electronically stored records that were billed at the rate for copies from microfilm, as well as the "calculated optical" page count, and the total charge, had the "paper" rate been billed for those same copies. *See: N.T.,* November 3, 2005, pp. 39–40.

nent "as a reasonable approach to calculating some of the damages in the case." N.T., October 20, 2004, p. 118. Consequently, the trial court, as fact finder, was certainly acting within its discretion when it ruled that Recordex' own calculations were sufficient proof of damages. Accordingly, since we detect no abuse of discretion by the trial judge, we decline to disturb the damages award.

¶ 30 In the final question raised on appeal, Recordex challenges the trial court's award of prejudgment interest. Shortly after the trial court entered a verdict of $479,472.59 against Recordex, appellee filed a motion for post trial relief seeking to mold the verdict to include prejudgment interest. The trial court, by order dated June 14, 2006, granted the motion, and molded the verdict to include interest in the amount of $114,828.46.[16] Recordex argues that the trial court erred in granting this motion since the interest should have been an aggregate amount calculated from the date each class member overpaid for electronically stored records.

¶ 31 "Our review of an award of pre-judgment interest is for abuse of discretion." *Kaiser v. Old Republic Ins. Co.*, 741 A.2d 748, 755 (Pa.Super.1999) (citation omitted). "In contract cases, statutory prejudgment interest is awardable as of right." *Pittsburgh Construction Company v. Griffith*, 834 A.2d 572, 590 (Pa.Super.2003), *appeal denied*, 578 Pa. 701, 852 A.2d 313 (2004) (citation omitted). Recordex claims that the interest calculation in the present case was speculative. However, the information necessary for a more definite calculation, that is, the date on which each overbilled invoice was paid, was, at all times, within the sole control of Recordex. Even when it opposed appel-

lee's motion, it failed to provide a more accurate assessment of the interest due. Accordingly, we detect no basis upon which to overturn the trial court's award of prejudgment interest.

¶ 32 Judgment affirmed.

---

**16.** Judgment on the molded verdict of $594,301.05, was entered on June 28, 2006.