In all other respects, I join the majority's opinion.

WAYNE M. CHIURAZZI LAW INC., d/b/a Chiurazzi & Mengine, LLC, and David A. Neely, Appellees

v.

MRO CORPORATION, Appellant.

Superior Court of Pennsylvania.

Argued March 29, 2011.
Filed Aug. 11, 2011.

Carl A. Solano, Philadelphia, for appellant.

Paul A. Lagnese, Pittsburgh, for appellee.

BEFORE: PANELLA, SHOGAN and COLVILLE *, JJ.

OPINION BY SHOGAN, J.:

Appellant, MRO Corporation ("MRO") appeals from the order entered on June 17, 2010, in the Allegheny County Court of Common Pleas denying MRO's preliminary objections to the second amended complaint filed by Appellees, Wayne M. Chiurazzi Law Inc., doing business as Chiurazzi & Mengine, LLC, and David A. Neely (collectively "C & M"). On appeal, MRO challenges the trial court's holding that the Medical Records Act ("MRA" or "the Act"), 42 Pa.C.S.A. §§ 6151–6160, prohibits an entity that reproduces medical records without a subpoena from charging an amount that exceeds the actual and reasonable expenses of reproducing such medical records. We hold that the calculation of estimated actual and reasonable expenses for paper copies is not required by the statute and that the statutory schedule creates safe harbor rates for the estimated actual and reasonable expenses of producing such paper copies, as adjusted yearly by the Pennsyl-

---

* Retired Senior Judge assigned to the Superior Court.

vania Secretary of Health. We further hold that the statutory schedule does not create safe harbor copying rates for non-paper copies, such as copies produced on CD–ROM and by electronic means.[1] Thus, until the legislature further addresses this issue, entities that reproduce medical records can be held responsible for calculating, and then charging, the estimated actual and reasonable copying expenses of producing such non-paper copies. Given the statute's use of the word "estimated," such calculations do not have to be done on a case-by-case basis. Nonetheless, C & M's claims in this case regarding the CD–ROM copying fees are barred by the prior approval provision of 42 Pa. C.S.A. § 6152(a)(2)(i). Accordingly, we reverse and remand.

The trial court set forth the relevant facts and procedural history of this matter as follows:

> In this Memorandum and Order of Court, I address MRO Corporation's preliminary objections seeking dismissal of both counts within plaintiffs' second amended class action complaint.[1]

---

[1] Previously, I entered a court order dated February 4, 2010 addressing defendant's preliminary objections to plaintiffs' initial complaint. On March 3, 2010, I granted reconsideration. Thereafter, plaintiffs filed an amended and second amended complaint. The second amended complaint includes an additional plaintiff who received copies of medical records reproduced on a CD–ROM without receiving paper copies.

> The Chiurazzi/Mengine Law Firm has filed similar class action lawsuits against other entities that furnished medical records at GD09–012922 (defendant is IOD, Inc.), GD09–014785 (defendant is Magee Womens Hospital

of the University of Pittsburgh Medical Center), GD09–012919 (defendant is UPMC Presbyterian Shadyside), and GD09–012923 (defendant is Health Port).

> Count I of plaintiffs' complaint is a breach of contract/implied contract and Count II is a count titled Relief Pursuant to Declaratory Judgments Act.

> Each count is based on allegations that MRO charged plaintiffs, for producing medical charts and records, an amount in excess of the maximum charges permitted by the Medical Records Act.[2] The relevant provisions of the Act (42 Pa.C.S. § 6152(a)(1) and (2)(i)) read as follows:

> (a) Election.—

> (1) When a subpoena duces tecum is served upon any health care provider or an employee of any health care facility licensed under the laws of this Commonwealth, requiring the production of any medical charts or records at any action or proceeding, it shall be deemed a sufficient response to the subpoena if the health care provider or health care facility notifies the attorney for the party causing service of the subpoena, within three days of receipt of the subpoena, of the health care provider's or facility's election to proceed under this subchapter and of the estimated actual and reasonable expenses of reproducing the charts or records. However, when medical charts or records are requested by a district attorney or by an independent or executive agency of the Commonwealth, notice pursuant to this section shall not be deemed a sufficient response to the subpoena duces tecum.

---

1. The statutory schedule does, however, create a safe harbor of $15 for the search and retrieval of the original records from which such non-paper copies are made, as well as authorizing a charge for the actual cost of postage, shipping or delivery of such copies. 42 Pa.C.S.A. § 6152(a)(2)(i).

(2)(i) Except as provided in paragraph (ii), the health care provider or facility or a designated agent shall be entitled to receive payment of such expenses before producing the charts or records. The payment shall not exceed $15 for searching for and retrieving the records, $1 per page for paper copies for the first 20 pages, 75¢ per page for pages 21 through 60 and 25¢ per page for pages 61 and thereafter; $1.50 per page for copies from microfilm; plus the actual cost of postage, shipping or delivery. No other charges for the retrieval, copying and shipping or delivery of medical records other than those set forth in this paragraph shall be permitted without prior approval of the party requesting the copying of the medical records. The amounts which may be charged shall be adjusted annually beginning on January 1, 2000, by the Secretary of Health of the Commonwealth based on the most recent changes in the consumer price index reported annually by the Bureau of Labor Statistics of the United States Department of Labor.

---

[2] Defendant's preliminary objections to the Second Amended Complaint include the issues for which reconsideration was granted.

Plaintiffs do not allege that they were charged any amounts for the production of medical records that exceeded the charges provided for in the second sentence of § 6152(a)(2)(i) as adjusted annually by the Secretary of Health as provided for in the fourth sentence of this provision. Plaintiffs do allege that the amounts which they were charged significantly exceeded the actual and reasonable expenses of reproducing the medical records.

Plaintiffs contend that a health care facility may only charge its actual and reasonable expenses where these expenses are less than the amount set forth in the second sentence of § 6152(a)(2)(i) as adjusted. Defendant, on the other hand, contends that it may impose any charge that does not exceed the amounts permitted within the second sentence as adjusted.

If defendant's construction of the Medical Records Act is correct, this case and all related litigation will be dismissed. However, if plaintiffs' construction of the Medical Records Act is correct, this litigation will require consideration of several (possibly complicated) factual and legal issues, including what are actual and reasonable expenses, the applicability of the voluntary payment doctrine, and the applicability of the prior approval provision of § 6152(a)(2)(i).

Trial Court Opinion, 6/17/10, at 1–3 (footnotes in original).

The trial court went on to deny MRO's preliminary objections, and MRO sought permission to pursue an interlocutory appeal pursuant to 42 Pa.C.S.A. § 702(b). The trial court concluded that the issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." Order, 6/17/10. In an order filed on August 18, 2010, this Court granted MRO's petition for permission to appeal.

On appeal, MRO raises four issues for this Court's consideration:

1. Is an entity that reproduces medical records without a subpoena required to charge its "actual and reasonable expenses" for its services, thereby foregoing recovery of any profit, rather than charging the safe-harbor prices specified in Section 6152(a)(2)(i) of the Act?

2. Even if a health care entity producing records is limited to recovery of its own "actual and reasonable expenses," does that limitation apply to an independent for-profit company that reproduces records for the health care entities, thereby preventing such a company from recovering a profit?

3. May the producing entity charge the prices specified in Section 6152(a)(2)(i) under the section's "prior approval" provision if it gives the customer an invoice setting forth the prices and the customer reviews and pays the invoice without objection before receiving the records?

4. Does the Medical Records Act permit a medical records reproduction company or other producing party to collect and remit sales tax in connection with its services?

Appellant's Brief at 3.

 The standard of review we apply when reviewing a trial court's denial of preliminary objections is well settled.

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Feingold v. Hendrzak,* 15 A.3d 937, 941 (Pa.Super.2011) (quoting *Haun v. Community Health Systems, Inc.,* 14 A.3d 120, 123 (Pa.Super.2011)).

MRO's first three issues are interrelated and concern the propriety of fees charged pursuant to 42 Pa.C.S.A. § 6152. Specifically, MRO asserts that the trial court's conclusion that MRO is only permitted to bill actual and reasonable expenses is a misreading of the Act, threatens to put private reproduction companies out of business, and conflicts with *Liss & Marion, P.C. v. Recordex Acquisition Corp.,* 603 Pa. 198, 983 A.2d 652 (2009). We will address these issues concurrently.

In *Liss,* the Supreme Court of Pennsylvania addressed the reproduction of documents pursuant to the Act.

### Background

In 1986, the General Assembly amended provisions of Title 42 relating to the admission of evidence permitting litigants to introduce certified copies of original medical records at trial without having to present preliminary testimony as to their foundation, identity, and authenticity. 42 Pa.C.S. §§ 6151–6160. Known as the Medical Records Act (MRA), the enactment streamlines the records request process and caps the prices that medical care providers or their designated agents can charge for copying. 42 Pa.C.S. § 6152.

Recordex Acquisition Corp. and its parent corporation Sourcecorp, Inc. (Appellants) have contracts with approximately forty Philadelphia-area hospitals to provide medical record copying services. A hospital receives a subpoena or a request for medical records from a

litigant or his attorney and chooses whether to remit the originals or a certified copy of those records. 42 Pa.C.S. § 6152. If the hospital chooses to provide copies, it refers the request to Appellants, who retrieve the medical record and make a copy for the requester. Appellants invoice the requester directly, either before or after fulfilling the request.

Hospitals generally store patient records in six forms including, paper, microfilm, and electronic. "Electronic" records are either original computer generated charts or optical image files of charts scanned by hospital personnel and saved on hospital computers. Appellants' invoices listed copies from paper as "paper," copies from microfilm as "microfilm," "microfiche," or "fiche," [1] and copies from electronic records as "fiche/optical" or "fiche/image." Admitted Facts for Summary Judgment (AF) at 12. In their invoices, Appellants billed copies from both electronic and microfilm records at the microfilm rate (rate M). AF at ¶¶ 4, 16. Rate M is the highest permissible charge for certified copies under the MRA and applies only to microfilm. 42 Pa.C.S. § 6152(a)(2).

---

[1] 42 Pa.C.S. § 6152 refers to "microfilm" while Appellants' invoices refer to "fiche." However, microfilm, microfiche, and fiche are the same medium.

In February 2003, the law firm of Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock, and Dodig (Feldman firm) filed this class action lawsuit on behalf of a client it represented in a personal injury action and others similarly situated. The five-count complaint alleged that Appellants overcharged the client and others similarly situated by billing for copies of electronic records at rate M rather than at a lower default rate (rate D).

Appellee, Liss & Marion, P.C., is a law firm that represents plaintiffs on a contingency fee basis. Appellee was added to the lawsuit in March 2003. Appellee had represented several litigants who requested medical records from the hospitals under contract with Appellants. Following each request, Appellee typically received the certified copies of the records and an invoice directly from Appellants. On a few occasions, Appellants billed Appellee before remitting the certified copies. Appellee did not negotiate or challenge any of the invoices before joining this class action. AF at ¶¶ 13–14.

Appellants filed preliminary objections and sought dismissal of the complaint. The trial court sustained the objections in part and allowed the lawsuit to proceed only as a breach of contract action. In the breach of contract count, the contention was that the MRA-authorized rates were implied into contracts evidenced by Appellants' invoices and that by charging more than rate D for copies of electronic records, Appellants breached those contracts. In their answer to the complaint, Appellants denied the allegations and raised a "voluntary payment" defense.

In July 2004, the trial court certified the following class:

All individuals and entities who, with respect to a request or a subpoena for medical records or charts of health care provider or employee of any health care provider licensed under the laws of the Commonwealth of Pennsylvania, were billed for or paid to one or both of the defendants either or each of the following: (1) a charge for copies of records greater than the amounts prescribed by the Secretary of Health under the Medical Records Act ("MRA"), 42 Pa.C.S. § 6152 et

seq.; and (2) an unauthorized and/or unreasonable charge for copies from media not specifically provided for in the MRA. The class shall exclude class counsel, their law firm, and any lawyer or employee of their law firm.

Trial Ct. Order, 7/9/2004. The trial court named Appellee as the class representative and the Feldman firm as class counsel.[2]

[2] The trial court did not certify the class originally proposed by Appellee, which would have included clients who requested records through their attorneys in addition to the attorneys themselves. The court concluded that the clients' claims would be "duplicative" of the attorneys' claims so it limited the class as stated. Trial Ct. Memo., 7/12/2004, at 10.

In April and May 2005, the parties filed cross motions for summary judgment. After a hearing, the trial court entered summary judgment in favor of the class and ordered a full accounting at the Appellants' expense. Ultimately, the trial court entered judgment on a molded verdict in favor of the class for $594,301.05. The Superior Court affirmed the judgment. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 937 A.2d 503 (Pa.Super.2007). It held that Appellee had met the prerequisites for class certification. *Id.* at 510. Further, the Superior Court concluded that the trial court properly entered summary judgment in favor of the class. *Id.* at 514.

We granted permission to appeal on the following issues:

1) Does a private cause of action for breach of an implied contract arise out of a violation of the [MRA]?

2) Does the [MRA] require that copying of any records other than those stored on microfilm be billed **at the rate specified** for copying records stored on paper?

3) Do common issues of fact and law predominate among members of the class certified by the trial court?

*Liss,* 603 Pa. at 206–207, 983 A.2d at 656–657 (footnotes in original) (emphasis added).[2] The *Liss* Court held that there is a private cause of action for breach of contract, and that any paper copies of electronic documents are subject to the same per-page price as set forth in the statute— the only exception is where the copies are from microfilm. *Id.* at 216, 983 A.2d at 662–663. Thus, all paper copies are subject to a cap at the lower rate unless they are from microfilm, and only when those paper copies are from microfilm may the higher rate be applied. *Id.*

C & M argue that *Liss* is inapplicable because it did not present the same question at issue here. First, the plaintiffs in *Liss* apparently received paper copies of the documents. More importantly, C & M argue that the Court in *Liss* did not specifically answer whether the "estimated actual and reasonable expenses" language in section 6152(a)(1) prevents the use or applicability of the fee schedule unless those actual expenses exceed the amounts listed in the fee schedule. C & M's Brief at 19. While we can agree that much of the discussion in *Liss* is distinguishable from and inapplicable to the case at bar, we conclude that *Liss* is controlling as to the fees that are charged under the Act for paper copies of medical records.

Initially, we note that the records reproduced in this case did not involve the use

**2.** As will be discussed below, we emphasize the Supreme Court's nomenclature for the fee. The Court referred to the rate, not as an actual or reasonable expense or cost, but as

the **rate specified** in the fee schedule in the Act. This underlies our conclusion that the fee schedule provides a reasonable cost, and not merely an allowable cost cap.

of a subpoena. Nonetheless, like the Court in *Liss* and the trial court in the instant case, we conclude that section 6152(a) applies pursuant to the reference to section 6152(a)(2)(i) in section 6155(b)(1).[3]

 Ultimately, though, the issue is not about the use of subpoenas or the original media from which the records are transferred. Rather, the issue is whether the rates provided under the Act are *per se* reasonable fees that constitute safe harbor rates, or whether they are just a cap on actual expenses that must be calculated on a case-by-case basis and which could vary widely. As the trial court succinctly stated:

> [C & M] contend that a health care facility may only charge its actual and reasonable expenses where these expenses are less than the amount set forth in the second sentence of § 6152(a)(2)(i) as adjusted. [MRO] on the other hand, contends that it may impose any charge that does not exceed the amounts permitted within the second sentence as adjusted.

Trial Court Opinion, 6/17/10, at 3.

The Court in *Liss* began its discussion of the rate issue by stating: "[h]aving established that Appellee properly stated a contract claim against Appellants, we turn next to the question of whether Appellants breached the parties' contract by charging rate M [(copies from microfilm)] rather than rate D [(copies from all media other than microfilm)] for copies from electronic records." *Liss*, 603 Pa. at 215, 983 A.2d at 662. As can be seen from this quote from *Liss*, the Supreme Court labels the fees as

rates, and not price caps for the varied and case specific actual and reasonable expenses. Nowhere does the Court interpret the Act as requiring that a record reproducer bill only the actual and reasonable cost for paper copies; the Court concludes that the Act refers to a billing rate. Moreover, the Court ultimately calls the fee set for copying from any media other than microfilm ("rate D") the "default rate" and states that the reproducer of the records is "entitled to receive rate D per page." *Id.* at 216–217, 983 A.2d at 662–663. Also, the language of the Act itself uses "shall not exceed" for copying charges as opposed to "actual cost" language for shipping charges. This suggests copying charges are not cost-based.

For these reasons, we agree with MRO that *Liss* is dispositive with respect to the rates charged for producing paper copies. We also find support for our position in the language of the statute. 42 Pa.C.S.A. § 6152(a)(1) refers to the *estimated* actual and reasonable expenses. Thus, even accepting the trial court's conclusion that the "such expenses" language of § 6152(2)(i) refers to that language, it is referring to an estimate. Thus, it is reasonable to conclude that the rates that follow create safe harbor rates for the estimated actual and reasonable expenses of producing paper copies. Accordingly, we are constrained to conclude that the trial court erred in denying MRO's preliminary objections holding that MRO was required to charge at an "actual and reasonable rate" and was not permitted to charge at the default rate ("rate D") provided by the Act for producing paper copies of medical records.

---

3. **(b) Rights to records generally.—**
(1) A patient or his designee, including his attorney, shall have the right of access to his medical charts and records and to obtain photocopies of the same, without the use of a subpoena duces tecum, for his own use. A health care provider or facility shall not charge a patient or his designee, including his attorney, a fee in excess of the amounts set forth in section 6152(a)(2)(i) (relating to subpoena of records).
42 Pa.C.S.A. § 6155(b)(1).

We reiterate that *Liss* did not involve, and thus did not address, copies of medical records reproduced on a CD–ROM or other electronic media without receiving paper copies. The rates set forth in the Act address **paper** copies and do not contemplate the reduced and diminishing costs incurred in reproducing medical records in an electronic format. *See* 42 Pa.C.S.A. § 6152(a)(2)(i).

 However, we note that the rate charged in the instant case for the electronic reproduction of the records from Heritage Valley Medical Center on CD–ROM was not prohibited under the voluntary payment doctrine [4] and the prior approval provision set forth in § 6152(a)(2)(i). MRO's invoice clearly stated that records of more than 100 pages would be reproduced on CD–ROM. Second Amended Complaint, Exhibit 2. C & M admit that they received the invoice and paid for the CD–ROM without protest. Second Amended Complaint, at 9, ¶¶ 33–36. As the Court in *Liss* explained, the reproduction of medical records is a matter of contract, and "the MRA rates embody the public policy of the Commonwealth regarding the amounts to be charged by the industry for copying medical records.... The parties are free to negotiate other terms." *Liss*, at 211 n. 6, 983 A.2d at 659 n. 6. Therefore, there was no violation of the Act with respect to the rate charged for the reproduction of records onto CD–ROM.

 MRO offers the tangential, if not alternative, argument that, were this Court to conclude that a medical records reproduction company is limited to recovering only actual and reasonable expenses, such a ruling would not apply to MRO because it is an independent for-profit company and not a health care provider under 42 Pa.C.S.A. § 6152(a)(1). MRO's Brief at 46. As explained above, we concluded that the Act does not limit medical records reproducers to actual and reasonable expenses for paper copies under 42 Pa.C.S.A. § 6152(a)(1). Rather, the Act provides for safe harbor fees for paper copies where 42 Pa.C.S.A. § 6152(a)(1) and (a)(2)(i) are read in conjunction. However, we address this issue briefly to iterate that MRO is a covered entity under the Act. The Act states: "the health care provider or facility or **a designated agent** shall be entitled to receive payment of such expenses before producing the charts or records." 42 Pa.C.S.A. § 6152(a)(2)(i) (emphasis added). MRO is an agent of the health care provider and, thus, specifically contemplated and covered by the billing provisions in the Act.[5]

 Finally, MRO maintains that the trial court erred in not dismissing C & M's claim that MRO violated the Act by collecting sales tax. MRO argues that it was not only permitted, but required to collect sales tax on the reproduced records provided. MRO's Brief at 54. MRO cites to

---

4. This Court has defined the voluntary payment doctrine as follows: "Where, under a mistake of law, one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered.... Thus, money paid voluntarily, although under a mistake of law as to the interpretation of a contract, cannot be recovered." *Acme Markets, Inc. v. Valley View Shopping Center, Inc.*, 342 Pa.Super. 567, 493 A.2d 736, 737 (1985) (internal citation omitted).

5. Given our disposition regarding C & M's prior approval of the charges for CD–ROMs, we need not decide whether the rates charged by a medical records reproducer of non-paper copies can include a profit, as it is not necessary in the decision reached today. However, we implore the Legislature to revisit the Act and speak to this issue directly as it is likely to be a point of contention in future litigation.

Section 202(a) of the Pennsylvania Tax Code, which states:

**Imposition of tax**

(a) There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

72 P.S. § 7202(a). C & M counter that the Act only permits charges for searching and retrieving records, a per-page charge for copies, and a charge for shipping. C & M's Brief at 72.

However, MRO asserts that, even if it erroneously collected sales tax, C & M's action against MRO on this point is misplaced as C & M's action is properly against the Commonwealth for a refund of those taxes which were collected, held in trust, and turned over to the Commonwealth. We agree.

 Pursuant to 72 P.S. § 7253, a taxpayer who has been improperly charged Pennsylvania sales tax must file a petition for refund with the Commonwealth. *Lilian v. Commonwealth of Pennsylvania,* 467 Pa. 15, 354 A.2d 250 (1976); *Silberman v. Commonwealth,* 738 A.2d 508 (Pa.Cmwlth. 1999).[6]

For the reasons set forth above, we reverse the order dismissing the preliminary objections and remand to the trial court for the entry of an order granting MRO's preliminary objections and dismissing C & M's complaint.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

COLVILLE, J., files a Dissenting Opinion.

DISSENTING OPINION BY COLVILLE, J.:

I dissent.

MRO filed amended preliminary objections to C & M's second amended complaint. MRO's preliminary objections raised several grounds in support of its contention that C & M's complaint is legally insufficient. Central to this appeal, MRO maintained that a demurrer is appropriate because MRO "complied with [Section 6155 of the MRA] by charging fees that did not exceed the amounts set forth in [Subsection 6152(a)(2)(i) of the MRA.]" MRO's Amended Preliminary Objections to C & M's Second Amended Class Action Complaint, 04/06/10, at ¶ 22.

MRO's preliminary objections did raise other grounds in an attempt to have the court grant a demurrer. For instance, in its complaint, C & M alleged that MRO charged a sales tax for its services and that such charges are not permitted under Pennsylvania law. MRO argued that Counts I and II of the complaint, *i.e.,* counts that, in part, concern the charging and payment of sales tax, should be dismissed because MRO is required to charge a sales tax. MRO further argued that, if C & M believes that they are entitled to recover the sales tax, they must petition the Department of Revenue for such relief. In addition, MRO contended in a separate preliminary objection that, even if C & M's claims are legally sufficient, the claims are barred by the voluntary payment doctrine.

---

**6.** While the Superior Court is not bound by decisions of the Commonwealth Court, such decisions provide persuasive authority. *Pe-*

*tow v. Warehime,* 996 A.2d 1083, 1089 (Pa.Super.2010).

In response to MRO's preliminary objections, the trial court entered the following order:

> On this 17th day of June, 2010, upon consideration of [MRO's] preliminary objections seeking dismissal of [C & M's] Second Amended Complaint **on the ground that [C & M] were not charged any amount for production of medical records that exceeded the amounts set forth in the second sentence of 42 Pa.C.S.[A.] § 6152(a)(i), as adjusted,** it is hereby ORDERED that these preliminary objections are overruled based on my construction of the relevant provisions of the [MRA] as not allowing charges that exceed actual and reasonable expenses.
>
> I am of the opinion that this order of court overruling [MRO's] preliminary objections involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the matter.

Trial Court Order, 06/18/10 (emphasis added). This Court later granted MRO's petition for permission to appeal the court's order.

The order subject to this appeal only overruled MRO's preliminary objections

which claimed that a demurrer was required because the amounts MRO charged C & M did not violate Subsection 6152(a)(2)(i) of the MRA. As I interpret the trial court's order, the court has yet to rule on the remainder of MRO's preliminary objections. Thus, in my view, the sole controlling question of law before this Court is whether the trial court correctly interpreted the MRA such that MRO could only receive payment for its actual and reasonable expenses.[1]

I do not believe that a Pennsylvania appellate court, including the Supreme Court in *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 983 A.2d 652 (2009), has addressed the issue currently before this Court. Thus, I would turn to the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et. seq.*, for guidance in interpreting the pertinent provisions of the MRA.[2]

> Under the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit.

---

1. My beliefs in this regard are bolstered by the trial court's opinion, which only addressed its interpretation of the MRA. In fact, in its opinion, the court states, *inter alia:*
 If [MRO's] construction of the [MRA] is correct, this case and all related litigation will be dismissed. However, if [C & M's] construction of the MRA is correct, this litigation will require consideration of several (possibly complicated) factual and legal issues, including what are actual and reasonable expenses, **the applicability of the voluntary payment doctrine,** and the applicability of the prior approval provision of [Subsection 6152(a)(2)(i).
 Trial Court Opinion, 06/18/10, at 3 (emphasis added); *id.* at 12 ("For these reasons, I am

overruling [MRO's] preliminary objections seeking dismissal of [C & M's] complaint **on the ground that [MRO's] charges did not exceed the amounts provided for in the second sentence of 42 Pa.C.S.[A.] § 6152(a)(2)(i).**") (emphasis added and footnote omitted).

2. "Statutory interpretation implicates a question of law. Thus, [this Court's] scope of review [would be] plenary, and [its] standard of review [would be] *de novo.*" *U.S. Bank. Nat. Ass'n v. Parker*, 962 A.2d 1210, 1211 n. 1 (Pa.Super.2008) (citation and quotation marks omitted).

*Parker*, 962 A.2d at 1212 (citations omitted).

Subsection 6155 of the MRA, which governs the manner in which MRO was to determine its charges, states in relevant part, "A health care provider or facility shall not charge a patient or his designee, including his attorney, a fee in excess of the amounts set forth in section 6152(a)(2)(i) (relating to subpoena of records)." 42 Pa.C.S.A. § 6155(b). Pursuant to the clear and unambiguous language employed in Subsection 6152(a)(2)(i) of the MRA, designated agents of health care providers, such as MRO, "shall be entitled to receive payment of **such expenses** before producing the charts or records." 42 Pa.C.S.A. § 6152(a)(2)(i) (emphasis added).

The only reference to "expenses" in Section 6152 that precedes Subsection 6152(a)(2)(i)'s "such expenses" terminology can be found in Subsection 6152(a), wherein the General Assembly specifically references "estimated actual and reasonable expenses." 42 Pa.C.S.A. § 6152(a) ("[I]t shall be deemed a sufficient response to the subpoena if the health care provider or health care facility notifies the attorney for the party causing service of the subpoena ... of the **estimated actual and reasonable expenses** of reproducing the charts or records.") (emphasis added).

Furthermore, after mandating that entities such as MRO receive payment of "such expenses," Subsection 6152(a)(2)(i) provides,

> **The payment shall not exceed** $15 for searching for and retrieving the records, $1 per page for paper copies for the first 20 pages, 75¢ per page for pages 21 through 60 and 25¢ per page for pages 61 and thereafter; $1.50 per page for copies from microfilm; plus the actual cost of postage, shipping or delivery.

42 Pa.C.S.A. § 6152(a)(2)(i) (emphasis added). In my view, by stating that "the payment shall not exceed" the various prices listed, the plain language of Subsection 6152(a)(2)(i) sets a cap on the amounts entities such as MRO can charge with respect to their expenses; the subsection does not set a default rate that such entities may or should charge.

In short, I am of the opinion that the clear and unambiguous language of the pertinent provisions of the MRA evinces the General Assembly's intent to require entities such as MRO to receive payment only for their estimated actual and reasonable expenses; these expenses cannot exceed the limits expressed in Subsection 6152(a)(2)(i). Consequently, because the trial court's interpretation of the MRA comports with the Statutory Construction Act, I would affirm the order and remand for further proceedings.